Duncan, J.
delivered the opinion of the Court.
A verdict was given for the plaintiffs under the recommendation of the Chief Justice, before whom the cause was tried, subj'ect to the opinion of the Court on the construction of the assignment of Cohen, Anker Joseph.
The question is, whether, on the construction of the assignment, the preference -was a personal one or covered the notes mentioned, whoever might be the holders. These notes were drawn by Cohen, Anker £s? Joseph, and indorsed by Heilner Co. to Florence £s? Wilson, for the accommodation of Cohen, Anker £s? Joseph, for.goods bought by them from Florence Wilson. They were not due at the time of the assignment, but remained unpaid in the hands of Florence Wilson. On the 1st June, 1816, the day on which the'assignment was executed, Florence £s? Wilson released Cohen, Anker &? Joseph. On the 9th July, Heilner £5? Co. likewise made an assignment; *408 and on the same day, the defendants, as assignees, released Heilner &? Co. The assignment of Cohen, Anker <§• Joseph was on the following trusts : 1st. To pay and satisfy the following named persons the following sums, to wit: Lewis Allen and several persons by name, being for money by them respectively lent; and secondly to pay and satisfy the following named persons the following sums of money, being for notes lent or indorsements, to witSamuel Heilner & Co. the sum of 2053dollars, the notes to secure payment of which this action is brought; to Florence & Wilson the sum of 6490 dollars ; and to several others by name. It was provided by the assignment, that no one of the debts before mentioned, should have any preference or priority in the order of payment, but the same should be paid rateably and in equal proportions, according to their respective amounts, out of the monies recovered, until the whole should be paid and satisfied. And it was further provided, that, no one of the' persons, creditors, preferred and named, as aforesaid, should receive their proportion, upon whose paper Cohen, Anker &? Joseph should remain endorsers until they should have taken up the said notes, or otherwise freed them from their responsibility as indorsers.
The construction of every writing depends on the fair import of the terms used as applied to the subject matter. It is a sound and settled rule of construction, that every clause and every word are to be considered, none rejected that are not insensible or inconsistent, and, as far as is consistent with the general intent, each to have its effect. The plain object, the general intent of these assignors, was to provide for the payment of two classes of debts : one arising from a direct loan of money, the other arising from notes lent, or indorsements given; those which their friends, by their indorsements, on'the event which had taken place, their failure, were bound to pay. I cannot draw the conclusion contended for on the pan of the defendants, from the use of the words, persons, and persons before named; that this is a nomination of persons, and that they take nominatim. The names of the indorsers were necessarily introduced to designate this preferred class of debts; they were used, not as a description of persons, appointees by name, but ás a description of the debt intended- to be preferred. It was the appropriation of a fund to these classes of debts—it ran with the debt, whoever *409 mi ght be the creditor. Because the indorsers were liable to pay before application was to be made to the fund, it did not require the indorsers first to pay the note, and then to come in on the. fund. The raising the money in the first instance might be ruinous to the indorsers. No good could result from this circuitous course; no benefit arise to any one ; for it would be the duty of the assignees to retain the specified amount of the notes before a dividend could be made among the general creditors. The holders of the notes, through the medium, and in the name of the indorsers, who would stand as the trustees for the holders who had the beneficial interest, had the right to apply directly to the fund. In the proviso regulating the equality of distribution among those two classes, the word, persons, is dropped, and the word, debt, is substituted as synonymous ; no one of the debts before mentioned shall have any preference or priority in the order of payment, but that the same, i. e. the same debts, not the above named persons, shall be paid in equal proportions, according to their several amounts, until the -whole shall be paid and satisfied. The term, persons, is used in the same sense, as to lenders of money and lenders or indorsers of notes ; it would be difficult to maintain the ground taken by the defendants ; that if the lenders of money had taken notes and indorsed them, these notes were riot to be preferred because they had been indorsed ; and it would be idle to require the holder to coerce payment from the indorsers, when he was willingto accept of payment from the debtor,to discharge the indor^ sers and to release the drawer on his terms. Here the notes had some time td run ; it was well known to Cohen, Anker BP Joseph that they were in the hands of Florence B? Wilson, and they appoint this mode of relieving the plaintiffs; and when the holders of the notes came into the measure, release Cohen, Anker B? Joseph, and, by so doing, release the indorsers, these acts would be substantially the same as to all parties as if the holders had received payment from Heilner BP Co., and they had demanded payment of these notes. The assignees agree to this course, Cohen, Anker B? Joseph agree to it, Heilner BP Co. agree. Why may it not be done directly, instead of performing the ceremony of resorting to Heilner B? Co., and then Heilner B? Co. resorting to the fund particularly when all interested agree to it. Now the suit being brought in the name of Heilner B? Co., is *410 conclusive evidence of their assent, until they dissent; and j <j0 not ¡¡noff that the Court would suffer them to do this, after their discharge, by releasing the drawers. The . , ,, , , judgment is not to be pronounced ^y catching at a particular word, but by considéring the scopé and end of the whole instrument; and, as is said in Hobart, 273, the law being a judge of any act, deed, or bargain, consisting of divers parts, all tending to one end, doth judge of the whole, and give every part his office to make up the general intent, and doth not break the words in pieces. This construction renders the sense consistent throughout, and makes the preference what it was intended to be, a real and substantial one ; whereas, on the restricted construction, under the circumstances of this case, and in many that must occur under assignments such as these, and I suppose this is the usual form of this most common species of transfer of property, and provision for payment of debts, the intended preference would be unavailing and illusory. There is something here so much approaching privity of contract, so much a covenant, running with the debt, that the .difficulty with me is, whether, on another ground reserved on the trial, the form of action, the verdict ought not to be set aside, inasmuch as there was such privity between Florence Wilson, and the defendants, and this fund, as that this action ought to have been brought in their own names. But I am not able to distinguish this from the case of Brown for the use of Phillips v. Weir, lately decided in this Court; and it is not straining the construction too far to consider Heilner 8p Co. as trustees for Florence Wilson, their names used, for the benefit of whoever might be concerned in interest; and then, on common law principles, the chose in action could not be assigned so as to enable the assignee to support an action in his own name, nor could the cestuy qui trust bring the action in his own name, yet in both cases the Court will take care of, and protect these equitable Interests, and would not suffer the party whose name was used, to release or discontinue the action. In a court of equity, In a case like this, the party for whose use the suit is brought having the beneficial interest, would be admitted to sue and assert his right in his own name ; but, in common law courts, the forms do not always admit of this; yet, in these Courts, if an agreement is made with A, to pay money, or do any act for the use of B, an action can be maintained in the name of B. United States v. Kennan, 1 Peters, 168.
*411 The Court agreeing in opinion that this is the legal construction of this instrument, there is no strict necessity to give an opinion on the evidence rejected, which was offered by the plaintiffs to explain and to vary the writing; but as it might countenance an opinion, that the accuracy of the decision at Nisi- Prius was doubted, it is best at once to declare the unanimous judgment of the Court, that the evidence was properly rejected. It is, however, not intended to go into the general doctrine how far, under certain given circumstances of fraud, or mistake of the scrivener in varying from his instructions, such testimony is admissible to reform a writing; yet I would hesitate long before I would admit that, in» dependent of alleged fraud, or omission in fact, or variance from instruction given to the scrivener, the mistake of the parties as to the law, or their ignorance of the legal effect of the acts, or of the words used by them, would be grounds for reforming a deed, either in Courts of law or equity. Of this, however, no opinion is now given ; but, distinct from the general principles of the admission of such testimony between the parties, parol evidence never can be received to vary a written agreement, even although a clear mistake was proved, ora departure from written instructions, tó affect the interest of third persons, uninformed of the facts, and who have bona jide, and for a valuable consideration, acquired rights under it. Here the rights of third persons would be affected; the releasing' creditors, who on the credit of the deed of assignment executed releases of their debts, who are considered as purchasers, and whose rights must stand or fall by the interpretation given to the instrument. But really, if this evidence had been admitted, it would have cut up the action in the name of these plaintiffs by the root; for it was offered to prove that the names of Florence <§• Wilson should have been inserted instead of Heilner 8$ Co., and that that was the true agreement of the parties, thus stripping the present nominal plaintiffs of all right, both in law and equity, of all interest, both nominal and real, legal and equitable, and conferring all right, both in name and in reality, on Florence 8f Wilson ; in which case, the action would have been clearly misconceived. The new trial.is refused. \
New trial refused.