Morton J.
In this bill the plaintiffs allege, that Wins-low and Henry Lewis, two of the defendants, on the 15th day of January, 1824, being insolvent, by a deed of indenture of three parts, assigned their property to Townsend and Austin, the other two defendants, in trust, to be applied in the first place to the payment in full of certain specified *536 debts, and the remainder to be divided pro rata among the creditors who should become parties to the deed. They further allege, that their debt was one of those designated to be paid in full; that the trustees accepted the trust, received the property of the debtors under the assignment, paid oil the preferred debts, except the plaintiffs’, and made a dividend among creditors who executed the indenture ; and they pray that the trustees may stand charged with the execution of the trust, and be ordered to pay the plaintiffs the amount of their debt.
The defendants, in their several answers, admit that they signed and sealed the indenture, but they say that it was. returned to the debtors for the purpose of procuring the signatures of the creditors ; that it was never intended by the parties of the first and second part, that it should take effect and go into operation until a majority in interest of the creditors should have signed it, and that it never was delivered by the debtors or creditors as their deed, to the assignees. They further declare, that subsequently the debtors compounded with their creditors, and that the deed, if it ever had any effect, was by the agreement of the debtors, creditors and assignees, rescinded and annulled.
In this state of the case, the first inquiry which presents itself for our consideration, is, whether the assignment was executed and became the deed of the persons by whom it was subscribed. The signing and sealing are admitted, but it is denied that it ever was delivered.* The instrument contains all the formalities of a complete and perfect deed of assignment. One part is found in the hands of the assignees and is produced by them in court; another part, as appears by the testimony of S. Haskell, was, several months subsequent to the date, in the hands of the creditors, and was examined and made use of by them. In adjusting their claims it was often referred to by the assignees, as well as *537 by the creditors, and no question was then made of its validity.
Where a deed, with the regular evidence of its execution upon the face of it, is found in the hands of the grantee, the presumption is that it has been duly delivered.[1]
It further appears, as well from the answer of Austin, one of the assignees, as from the deposition of Haskell, that all the property of the debtors passed into the hands of such assignee and was held by him for a long time, and until it was sold for the benefit of the creditors. Haskell further testifies, that Austin appeared in the character of assignee, gave to the creditors estimates of the supposed value of the property of the debtors in his hands, and often spoke of it as holden by him under the assignment; that Austin often stated to the witness, that he held the property in character of assignee and for the use of the creditors, and that the debtors, when they requested the witness to execute the indenture, informed him that they had assigned their property for the benefit of the creditors.
We are therefore satisfied, that the deed of indenture was delivered by the debtors to the assignees and to the creditors. It could not have been delivered as an escrow, because it was delivered to the parties ; an escrow can be delivered only to a third person. It could not have been delivered to the parties conditionally, to take effect upon the happening of any future contingency, because this would be inconsistent with the terms of the instrument itself. Upon delivery it became an absolute deed, and went into immediate operation as to all who had executed it. If it had been the intention of the parties to make a conditional assignment, to take effect only upon the signature of the whole or a major part of the creditors, that condition ought to have been inserted in the instrument inself. But to permit parties to a deed purporting to be absolute, to show by paroi evidence that it was conditional, and to avoid it for a non-performance of the condition, would be not only a violation of the fundamental *538 rules of evidence, but productive of great injustice and mischief.
It is also very apparent from the defendants’ answers and the evidence in the case, that the assignees accepted the trust. All the debtors’ property and effects went into the hands of one of them. He represented himself as assignee ; made proposals to the creditors in the name of both assignees ; and claimed to hold the property by virtue of the assignment. He cannot now be permitted to say that the deed under which he then acted was invalid, or that he did not accept the trust. It is now said that he held the property and disposed of it as the agent of the debtors ; but this' is contrary to his declarations at the time. If he held the property as agent, it was liable every day to be attached as the property of the debtors. Their insolvency was known, and their proceedings gave publicity to it; and it is not to be supposed that the creditors would lie by and see their insolvent debtors dis posing of all their property to satisfy favored creditors, with out an effort to secure themselves.
But it is further said, that if the deed of assignment was duly executed, and if by virtue of it the property vested m the assignees, yet that it was afterwards, by the agreement of the several parties to it, rescinded and annulled.*
It may well be doubted, whether the three parties named in the instrument had the power to annul it. It is true that the preferred creditors are not directly made parties to the indenture. But where a trust is created for the benefit of third persons, even without their knowledge, they may, if they choose, afterwards affirm the trust and enforce its execution, and they are entitled to a reasonable time in which to make their election. '
The plaintiffs allege that they gave reasonable notice tc the trustees, of their desire and intention to avail themselves of the assignment, and of their readiness to perform whatever was incumbent on them to entitle them to the full benefit of the trust created in their favor. This is not denied in the *539 defendants’ answers, and must therefore be taken to be true. The plaintiffs must be presumed to have confided in this assignment, and to have relied on this source of payment, otherwise they would have attempted to secure their demand in some other way. The plaintiffs having thus affirmed the trust, and the trustees having accepted and entered upon the execution of it, the latter had not the power, without the consent of the cestui que trusts, to discharge themselves.
But we do not see any evidence that the parties to the indenture attempted or intended to annul it. The most obvious method to effect this purpose, if they intended it, would have been, to cancel or destroy the deed itself. This was not done. On the contrary, one of the assignees treated with the creditors in the character of assignee, and in that character made proposals which were acceded to. He proposed to give, and the creditors agreed to receive, thirty three and a third per cent, upon the principal, as their proportion of the funds, after allowing a sufficient sum to pay in full the preferred debts. But the written proposal does not state that this was to be in full satisfaction of their respective demands, nor were any discharges to be given. Th'e discharge contained in the indenture must have been relied on, and Haskell testifies expressly that it was a part of this agreement, that if from any cause the amount reserved for the payment of the preferred debts should not be needed for that use, the balance remaining should be distributed proportionably among the creditors, in addition to the thirty three and a third per cent. We are therefore well satisfied, that this was intended as a distribution under the assignment, and not as an abrogation of the deed of indenture.
But it is further contended by the defendants, that a bill in equity cannot be maintained by any of the preferred creditors, because they are not parties to the deed, and there is no privity between them and the trustees.* It is *540 true, that at law, covenants in deeds for the benefit of stran gers, are not considered valid; Hornbeck v. Westbrook, 9 Johns. R. 75; and that in deeds inter partes, the immedi áte operation is confined to the parties to them, so that no stranger can maintain any action upon the covenants con:aned in them, although intended for his benefit. 1 Chit. Pl. 5; 3 Bos. & Pul. 149; Storer v. Gordon, 3 Maule & Selw. 322.[1] But in equity it is otherwise. We have already seen that a stranger may avail himself of a trust created for his benefit, and may compel performance of it. By the assignment, property passed into the hands of the assignees, not only for the benefit of the creditors who became parties to the deed of assignment, but also for the benefit of the preferred creditors who chose to accept it and to affirm the trust; which we have seen was done by the plaintiffs. Upon this point the cases of Gregory v. Williams, 3 Merivale, 582, and Shepherd v. M'Evers et al. 4 Johns. Ch. R. 136, are decisive. We therefore think that this objection cannot prevail, but that the suit may well be maintained in the name of the preferred creditors.
It is however further objected, that the plaintiffs do not bung themselves within the description of creditors whose demands were to be paid in full.
By reference to the indenture it will be seen, that the assignees were, in the first place, to pay in full the demands contained in an account thereto annexed. Among other demands in that account will be found “ Stone & Todd’s' draft.”* * It appears in the case, that- Stone & Todd held, as drawers, a draft accepted by Winslow and Henry Lewis, upon which was due the sum of 3000 dollars ; and that previous to the date of the deed of assignment, Stone & Todd indorsed the draft to the plaintiffs ; so that at the time of the assignment, the plaintiffs were the bona fide holders of the draft.
*541 But it is contended, that the provision for the payment of Stone & Todd’s draft was personal, and intended only for their benefit, and that it will not operate in favor of their assignees. But we think this construction cannot be supported. The parties were designating the demands which were to be paid in full, and not the persons to whom payment was to be made.[1] **That this demand was referred to, cannot be questioned, and the expressions used in reference to it seem to indicate that it was then known to the parties that Stone & Todd were not the holders.
It was also at first objected, that the plaintiffs ought not to prevail, because the collateral security, by which the payment of this draft was secured, had been lost by the negligence and mismanagement of Stone & Todd, and of the plaintiffs. But there was no evidence to support this allegation, and it was understood to be waived by the defendants’ counsel.
Upon a view of the whole case we are of opinion, that the deed of indenture was duly executed ; that the assignees accepted the trust, and received and disposed of the property under the assignment; that the deed was not rescinded or annulled, but remains in full force ; that the preferred creditors, for whose benefit the trust was created, having affirmed it, may well maintain this bill against the assignees to enforce performance of the trust;[2] that the plaintiffs have shown their demand to be one which by the provisions of the indenture was to be paid in full; and therefore, that they are entitled to recover the amount of their draft with interest.
But trustees are liable only for the money which they have actually received. It appearing that Townsend, one of the trustees, received no property under the assignment, he cannot be charged.
That Austin, the other trustee, paid to creditors all the money which he received in trust, in good faith and through a misapprehension of his duties or a misconstruction of the *542 instrument under which he acted, cannot be admitted as a defence. His mistakes, however honestly made, ought not to prejudice the plaintiffs. In paying other creditors any portion of their demands before the preferred creditors were paid in full, he manifestly misapplied the trust fund, and he must be charged with the payment of the amount of the plaintiffs’ draft with interest.

 On this point were cited for the plaintiffs, Com. Dig. (Hammond’s ed.) Fait, A 3; 2 Mass. R. 447; 6 Mod. 218; 1 Johns. Ch. R. 240, 251, 297; Shep. Touch. 58; 8 Mass. R. 238; 6 Moore, 346; 3 Taunt. 60; 17 Johns. R 577; 17 Mass. R. 303; 16 Ves. 481: — for the defendants, 17 Mass. R. 454 ; 1 Johns. Cas. 114; 4 CrancK, 219; 4 Barn. & Aid. 440; 1 Barn. & Cressw. 82

 See Clark v. Ray, 1 Harr. & Johns. 323; 2 Stark. Ev. (5th Amer ed.) 271, and n. (1).

 On this point were cited, for the plaintiffs, 4 Johns. Ch. R. 136; 1 Johns. Ch. R. 129; 1 Johns. Cas. 205; 3 Johns. Ch. R. 261; 3 Maule & Selw. 371 3 Meriv. 582: —for the defendant, 14 East, 582; 1 Carr. & Payne, 247.

 On this point the defendants’ counsel referred to Com. Dig. Fait, D 2 (cites Co. Lit. 231 a and Carth. 76) and Hammond’s note l; 2 Inst. 673; 2 Lev. 74 ; 3 Lev. 138; Yelv. (Metcalf’s ed.) 177; 13 Mass. R. 405; 9 Johns. R. 75; 3 Maule & Selw. 322; 8 Mass. R. 201; 1 Chit. Pl. 5; 3 Bos. & Pul. 149, 2 Atk. 575; 17 Mass. R. 326; 3 Bl. Com. 435; Mitf. Pl. 129,132.

 See 1 Chitty’s Pl. (6th Amer. ed.) 3, 4; Strohecker v. Grant, 16 Serg. & Rawle, 237.

 The whole clause was,—“1822, Nov. 12. Stone & Todd’s draft, for which they hold a mortgage of B. Williamson to secure the payment of hie note 4865 to us, 3000 dollars.”

 See Heilner v. Imbrie, 6 Serg. & Rawle, 401.

 See New England Bank v. Lewis, 8 Pick. 113, and cases there cited.