ELIZABETH DOROTHEA BREVOORT et al., Respondents, *v.* WILLIAM R. GRACE et al., Appellants.

The legislature has power by special statute to authorize the sale of the lands of infants, and this power extends to the future contingent interests of those not in being, but it has no power to authorize, without their consent, the sale of lands in which adults, competent to act for themselves, have an interest, vested or contingent, unless a sale be necessary for the payment of taxes and assessments. .

*It seems* that where the legislature has power to authorize a sale, the mode and manner of conducting such sale are questions for its determination.

The will of L. devised one-half the income of certain premises to his wife so long as she should remain his widow, the residue of the income to his daughter E. during her life, the remainder to her issue in fee; in case of her death without issue or children of issue her surviving, then to such of the children of his brother J. as should be living at the time of the testator's death, and to their heirs, etc. The legislature passed an act (chap. 23, Laws of 1872) authorizing the Supreme Court to order a sale in fee simple absolute of the premises upon the petition of E. and her issue, and directing the mode of procedure. At that time E. had one child living, who was of age. All the children of J. had died, leaving heirs, a portion of whom were adults. *Held,* that said adult heirs had an estate in expectancy, contingent upon the death of E. without issue surviving, and that the statute, so far as it authorized the transfer of such interest without their consent, was unconstitutional; that a deed executed in pursuance of an order of the court in proceedings instituted under said statutes, to which said adult heirs were not made parties and did not assent, was inoperative to transfer such interests, and that therefore a purchaser could not be compelled to accept such deed and complete his purchase.

*Leggett* v. *Hunter* (19 N. Y., 446), distinguished and limited.

(Submitted May 14, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiffs, entered upon an order overruling demurrer to complaint and directing judgment thereon, also affirming said order.

This action was brought to compel defendants to take title to and to pay for 136 lots, situate in the city of Brooklyn,

bought by them at a referee's sale, made under and in pursuance of an order of the Supreme Court.

The complainant alleged the purchase by defendants and payment of the ten per cent, the execution and tender to them of a deed by the referee and their refusal to accept and to pay the residue of the purchase-money. The further facts set forth in the complaint are stated substantially in the opinion. Defendants demurred that the complaint did not state facts sufficient to constitute a cause of action in that the referee did not convey a good and valid title.

*Jno. E. Parsons* for the appellants. The legislature has not power to authorize the sale of lands in which adults, competent to act for themselves, have an interest, vested or contingent, without their consent. (Const. 1846, art. 1, § 6; *Powers* v. *Bergen*, 2 Seld., 358; *Wilkinson* v. *Peters*, 2 Peters, 652; *Taylor* v. *Porter*, 4 Hill, 140; *In re Trustees N. Y. P. E. School*, 31 N. Y., 574, 591; 2 Black. Com., 345.) The act in question (chap. 23, Laws 1872) would deprive the adult contingent remainder-men of their interests without due process of law. (3 Kent's Com., 206; Fearne on Remainders, 3; 3 R. S., title 2, art. II; *Happy* v. *Mosher*, 48 N. Y., 313; *Jackson* v. *Babcock*, 16 id., 246; *Empire City Bank*, 18 id., 199; *Wynehome* v. *People*, 13 id., 378; *Rockwell* v. *Nearing*, 35 id., 302.) The act cannot be sustained under the power of the legislature to sell real estate for the payment of taxes and assessments, as that is already provided for. (Chap. 327, Laws of 1855; *Jackson* v. *Babcock*, 16 N. Y., 246.) A court of equity will not compel a doubtful title like this to be taken. (*Seymour* v. *De Lancey*, Hopkins, 436; 5 Cow., 714; Fry on Spec. Per., 253, 256; *Watts* v. *Waddle*, 1 McL., 200; *Jervose* v. *Duke of Northumberland*, 1 J. & W., 569; *Price* v. *Strange*, 6 Mad., 159–164; *Hepburn* v. *Auld*, 5 Cranch, 262; *Sopier* v. *Williams*, 1 C. C. C. R., 479.)

*Winchester Britton* for the respondents. The legislature had power by an act to authorize the sale of the interests of

the persons *in esse* contingently interested in the land. (*Clark* v. *Van Surlay,* 15 Wend., 436 ; *Cochran* v. *Van Surlay,* 20 id., 379 ; *Towle* v. *Forney,* 4 Duer, 164 ; 14 N. Y., 423 ; *Williamson* v. *Berry,* 8 How. [U. S.], 555 ; *Power* v. *Bergen,* 6 N. Y., 358 ; *In re N. Y. P. E. Pub. School,* 31 id., 591 ; *Jackson* v. *Babcock,* 16 id., 246 ; *Leggett* v. *Hunter,* 25 Barb., 81 ; 19 N. Y., 445 ; *Williamson* v. *Berry,* 8 How. [U. S.], 537 ; *Sharpless* v. *Mayor, etc.,* 9 Harris Pa., 149 ; *Grant* v. *Courter,* 24 Barb., 232 ; *Wynehamer* v. *People,* 13 N. Y., 378 ; *Empire City Bank,* 18 id., 199 ; *Blagge* v. *Mills,* 1 Story R., 426 ; *Campbell* v. *Evans,* 45 N. Y., 356 ; *Happy* v. *Mosier,* 48 id., 313 ; *Rice* v. *Parkman,* 16 Mass., 326 ; *Sopier* v. *Mass. Gen. Hospital,* 3 Cush., 483 ; *Mead* v. *Mitchell,* 17 N. Y., 210.) The contingent interests of the remainder-men in said farm are not property within the meaning of the provisions of the State Constitution. (Bingham on Descents, 229–235 ; *In re Bull,* 45 Barb., 334 ; *Wolfe* v. *Van Nostrand,* 2 N. Y., 436 ; *Striker* v. *Mott,* 28 id., 82.) The legislature had power to authorize the application of part of the proceeds to the payment of taxes and assessments on said land. (*Leggett* v. *Hunter,* 19 N. Y., 445 ; *Graham* v. *Dunnigan,* 2 Bosw., 516 ; *Stowell* v. *Dougherty,* id., 31 ; *Fleet* v. *Dorland,* 11 How. Pr., 489 ; *Sheldon* v. *Ferris,* 45 Barb., 124 ; *Cairnes* v. *Chabert,* 3 Edw. Ch., 312 ; *In re Estate of Miller,* 4 Tuck., 814.) The remainders are both in fee ; one is a substitute for the other, and only one of them can take effect. (*Luddington* v. *Kime,* 1 Ld. Ray., 203 ; 2 Wash. R. P., 250, 251, §§ 23, 24 ; Willard's R. E., 169 ; 1 R. S., 724, § 25.) The remainder in fee in the premises is in Henry L. Brevoort and is contingent. (Williams' R. P., 256 ; Willard's R. E., 169 ; 2 Wash. R. P., 250, 251, §§ 23, 24 ; Bing. on Descents, 221 ; *Carmichael* v. *Carmichael,* 4 Keyes, 346 ; *Campbell* v. *Rawdon,* 18 N. Y., 412, 417.)

GROVER, J. The question in this case is whether the appellants, by accepting the deed the referee tendered to

them, and paying the purchase-money, would obtain a good title in fee simple to the premises in question.

Leffert Lefferts, in his lifetime, owned what was then regarded as a farm, containing about eighty-five acres, in the vicinity of Brooklyn, embracing the land in question in fee. He died in 1847, leaving a will, by which he devised the one-half of the income of the said farm to his wife, Maria Lefferts, so long as she should remain his widow, and the residue of said income to his daughter, Mrs. Brevoort, during her life. The remainder of the farm to her issue in fee ; but in case she should have no issue, or children of issue her surviving, then he devised such residue of the farm to such children of his brother John, deceased, as should be living at the time of his own death, share and share alike, and to their heirs, etc. Mrs. Brevoort was the only child and heir-at-law of the testator. Six children of the testator's brother John were living at his death, but have all since died, leaving heirs to the number of about thirty, twenty of whom have attained the age of twenty-one years. Mrs. Brevoort has but one child, Henry L. Brevoort, who is upward of twenty-one years of age. At the time of the death of the testator, the farm in question was used for agricultural purposes only, the income derived therefrom being only a few hundred dollars, and the taxes thereon but small. Since the death of the testator the farm has been included in the city of Brooklyn, and streets laid out, opened, graded and paved through it, by means of which the farm has been divided into blocks and city lots. The taxes have been greatly increased, and large assessments for local improvements have been made upon the property, greatly in excess of any income that has been derived therefrom. This change in the property since the death of the testator has not only prevented his widow and daughter from obtaining any income therefrom, but has created incumbrances thereon to a large amount, upon which portions of the property have been sold, and other considerable portions will be sold, unless the taxes and assessments shall be paid.

Under this state of facts the legislature enacted chapter 23 of Laws of 1872; page 44, section 1, of which provides that the Supreme Court may, upon petition of Mrs. Brevoort and her husband and her issue, or the children of such issue, at a general or special term thereof, authorize and order the sale in fee simple absolute of what remains unsold of the farm in question, or of any part or portion of such farm, at one time, or from time to time, as may be judged expedient and calculated to promote the interest of Mrs. Brevoort and Mrs. Lefferts, the daughter and widow of the testator, and of those who will be entitled to said lands and premises, upon the death of Mrs. Brevoort, under said will. Said section further provides for the appointment, by the court, of guardians of such applicants as were minors, and for a refer ence, to ascertain the facts and circumstances upon which the application is based, and to determine the necessity and expediency of a sale, and whether the interest of Mrs. Brevoort and Mrs. Lefferts, and those entitled to the real estate, under the will, upon the death of the former, will be thereby promoted. Section 2 provides for the manner of making sales and conveyances, when ordered by the court; section 3 enacts that conveyances made in accordance with section 2 shall vest in the purchasers an absolute title in fee simple. Section 4 provides for the receipt and application of the proceeds of the sale, by paying taxes, etc., and for the investment and reinvestment of the property and the preservation thereof for those entitled to the income of the land and the land under the will. Section 5 empowers the court to make such allowances as may be deemed proper for the costs and expenses of the proceeding. Section 6 further empowers the court to make such allowance to any trustee appointed to take charge of and invest the proceeds of the sale, etc., as should be deemed proper for his compensation. Under the provisions of this act, Mr. Brevoort, Mrs. Brevoort and their son, Henry Brevoort, presented a petition to the Supreme Court, setting forth the facts and praying for a sale of the lands embraced in the farm in question. Upon this petition a referee was

appointed to hear the proofs, etc., and all the proceedings, terminating in a sale by a referee appointed by the court, appear to have been conducted in conformity with the act.

Some objections are made to the validity of the act upon the ground that the costs and expenses of the proceedings and the compensation of the trustee are to be paid from the proceeds of the sale, and hence, in the events that may happen, these may be taken in part from the heirs of the children of the testator's brother, John, while the sale is made for the benefit of Mrs. Brevoort and Mrs. Lefferts, who are entitled to the income, the former during her life and the latter to one-half during her widowhood. I do not think these objections well taken. They clearly have no force as to the interest of Henry Brevoort, as he, being a party, has directly assented to those provisions of the act, and is bound by the orders of the court in this respect. As to the heirs of the children of the testator's brother, John, who will be entitled to the property in the event of the death of Mrs. Brevoort without issue, it is true that the expense of the proceedings in that event would be taken from a fund to which they were entitled, but I do not think this would invalidate the act as to them. Assuming, for the present, that the legislature had the power to authorize a sale of the property, and thereby convert real into personal property, and provide for its investment and management as such, the expenses of the proceedings are incidental thereto, and the power to effect the former necessarily includes the power to provide for the latter, and the mode of determining the amount and the fund from which payment should be made. All this must be determined as incidental to the principal object to be accomplished. Power to do the principal includes the power to provide for the incidents. Whether these expenses ought not to have been charged upon the income of the fund instead of the principal would, in the case assumed, be a question for the determination of the legislature.

The real question in the case is whether the legislature has the power, by special act, to authorize and provide for the

sale of the interest of known parties who have attained their majority and who are competent to act for themselves in real estate, and convert the same into personal, and provide for the investment and management of the proceeds without their consent, upon the ground that such sale would, in their judgment, promote the interest of such parties and others who are infants or who are not in being, and cannot, therefore, provide for the management of the property. If the legislature possesses this power, the act in question is valid in all respects, not only for the reason that in the present case it clearly appears that the life tenants would be greatly benefited by a sale, but also made highly probable that the interests of those in remainder would be promoted. It thus appears that if such power is possessed, this is a proper case for its exercise. But if the legislature possesses the power, it also has the power to determine whether the case presented is one proper for its exercise, and its determination is conclusive, as also of the mode and safeguards under which it shall be exercised. Henry Brevoort has, under the will, the remainder in fee in case he shall survive his mother, subject to open and let in any other children of Mrs. Brevoort who may hereafter be born, who shall survive her. We have seen that his title would pass under the deed of the referee, for the reason that he united in the petition and thereby assented to the proceedings under which the sale was made.

Special acts of the legislature, authorizing the sale of the real estate of infants and others incapable of acting for themselves, have been held valid in this State, and that a valid title as to such persons is acquired under sales pursuant to such acts. (*Clarke* v. *Van Surlay*, 15 Wend., 436.) The same case was before the Court of Errors in the name of *Cochrane and Wife* v. *Van Surlay* (20 Wend., 365), when the same rule was held, based upon the same reason, that it was the legitimate exercise of that paternal power over the persons and property of infants, which under the common law was an inherent right of sovereign power, which might be exercised under general laws or under peculiar circumstances by special legislation. But in his

opinion in this case, VERPLANCK, Senator says, speaking of clauses in the Constitution of 1822 which are also contained in the present Constitution: "Further protection is given to property by adding a prohibition against the taking of private property for public use without just compensation, and also another against the depriving any one of life or property without due process of law and by mere arbitrary legislation, under whatever pretext of public or private good."

In *Williamson* v. *Berry* (8 How., 495), and in a subsequent case, the Supreme Court of the United States determined differently upon the same title, but the difference between that and the courts of this State was not as to the power of the legislature to authorize the sale, but as to whether the consent of the Chancellor, etc., which was required by the act, had been properly given, so as to give validity to the sale.

In *Suydam* v. *Williamson* (24 How., 427), the United States Supreme Court abandoned the decision made in *Williamson* v. *Berry* (*supra*), and adopted and followed the decisions of the courts of this State, under the salutary rule that when any principle of law establishing a rule of real property has been settled by the courts of a State, that rule will be applied by the federal courts in cases where the latter acquire jurisdiction of cases within the State by reason of the character or residence of the parties.

In *Towle* v. *Forney* (4 Duer, 164), the doctrine of *Cochrane* v. *Surlay* was reaffirmed by this court. Other cases, to the same effect, might be cited, but from those, *supra*, it is clear that a special act of the legislature, authorizing the sale of the lands of infants, etc., is within the constitutional power of the legislature.

Doubts were expressed in some of the cases, *supra*, whether this power extended to those not in being, who might thereafter be entitled to some estate in the premises. The reasons upon which the rule is based as to the former, apply with equal force as to the latter. In both there is a want of capacity to manage and preserve the property, so as to protect the interest of those who are or may become entitled thereto, and

hence the necessity of devolving this duty upon the sove-reign. For this purpose the legislature, under our system, represents and possesses the powers of the sovereign autho-rity, and may discharge the duty either by general or special laws, as will best protect the rights of those interested, although it is obvious that the former should be preferred in all cases where practicable.

*Mead* v. *Mitchell* (17 N. Y., 210) was a case of partition, in which it was held that a valid sale of the future contingent interests of those not in being might be made pursuant to the judgment in the action. Although this is not an authority precisely in point, yet the judgment, as well as the opinions, show that such interests were equally within the control of the legislature as those of infants, etc.

Having arrived at the conclusion that the legislature may, by special act, authorize the sale of the lands of those not capable of acting for themselves, and also the contingent rights of those not *in esse*, it follows that a valid title would have passed by virtue of the deed of the referee, as to any future children of Mrs. Brevoort, or any issue of Henry Brevoort hereafter born. This would make the title valid as against everybody except Mrs. Lefferts, the widow of the testator, and the heirs of the children of his brother John. No point is made as to the right of the former; I shall there-fore assume that as to her the title has been made satisfactory, as it very readily might be.

The question then is as to the rights of the adult heirs of the children of the testator's brother John. In the event of the death of Mrs. Brevoort, leaving no issue sur-viving, an event which is possible, the title to the premises would vest in part in these adult heirs as tenants in com-mon with the other heirs, who are now infants, unless these rights are barred by the sale under the statute. The ques-tion is thus presented, whether the legislature can, by a special statute, authorize the sale of lands to which adults, competent to act for themselves, have a contingent right, and thus cut off such contingent interest therein, should

such events occur as would give the title in whole or part to those having such interest.

It is urged by the counsel for the appellants that such interest is not barred, for the reason that the adult heirs were not parties to and had no notice of the proceedings. To this the counsel for the respondent answers, that it was not necessary to make them parties or give them notice, as their interest was contingent, and represented by Henry Brevoort, who was a party, and who had a prior vested remainder in fee, subject to be defeated by his death during the life of his mother, Mrs. Brevoort, and cites *Clarke* v. *Cordis* (4 Allen, 466), *Nodine* v. *Greenfield* (7 Paige, 544), and *Mead* v. *Mitchell* (17 N. Y.; 210), in support of the position. In regard to this, I think that if the legislature possesses the power to authorize the sale, and thus cut off the rights of parties, the mode and manner of conducting it are questions for its determination. The questions whether the interest of all parties will be promoted by a sale, and whether a sale shall be made, when and how, may be determined in the statute; or power to hear and determine all or any of them may by the act be conferred upon the courts, and in case the latter course is adopted, the act may provide as to who shall be made parties, and have notice of the proceedings, as the legislature shall judge necessary and sufficient for the protection of all interests to be affected by the sale.

The real question is whether the legislature has the power, by a sale under a special act, to extinguish the rights of those of legal capacity to act for themselves in real estate, vested or contingent, upon the ground that in its judgment, or of that of any of the judicial tribunals of the state, the interests of all would be promoted thereby, without the consent of such parties. This precise question was decided in the negative by this court in *Powers* v. *Bergen* (2 Selden, 358). The validity of the statute was, in that case, attempted to be upheld, upon the ground that a sale was necessary to provide for the payment of taxes and assessments; but the opinion shows that neither the act nor the proceedings showed any

such foundation therefor. In the present case the act and proceedings show that the premises were largely incumbered by both; but the difficulty is, that the quantity of land authorized to be sold, and which, in fact, was sold, was not limited to the quantity necessary for that purpose. The act authorized the sale of the entire premises, and, under its provisions, all have been sold, in the aggregate, for about eight hundred thousand dollars, a part of which were purchased by the appellants. Surely a sale of land, which was already subdivided into parcels and sold in that manner, cannot be upheld on the ground that it was necessary for the payment of taxes and assessments amounting only to a small part of that sum. The act could only be sustained upon that ground by limiting the sale to a quantity necessary for those purposes. In the case last cited, the learned judge concedes the power of the legislature, in acting as the guardian and protector of those incapable of acting for themselves by reason of infancy, lunacy, etc., to pass general or special laws under which an effectual disposition of their lands and other property may be made in order to promote their interests; and, after an allusion to the fact that, in England, private acts of parliament are a mode of assurance, proceeds to say that here the sovereign and absolute power resides in the people, and that the legislature can exercise such powers only as have been delegated to it. The right of eminent domain or inherent sovereign power gives the legislature control of private property for public uses, and only for such uses; in such cases, the interest of the public is deemed paramount to that of any individual, and yet, even here, the Constitution of the United States and the Constitution of this State have imposed a salutary check upon the exercise of legislative power for that purpose, by providing that private property shall not be taken for public use without just compensation. It follows that if the legislature should pass an act to take private property for a purpose not of a public nature, or if it should provide, through certain forms to be observed, to take the property of one and give it or sell it, which is the same thing in principle, to another; or,

if it should vacate a grant of property under the pretext of some public use, such cases would be gross abuses of the discretion of the legislature and fraudulent attacks on private rights, and the law would be clearly unconstitutional and void. (2 Kent's Com., 340.) If the power exists to take the property of one without his consent and transfer it to another, it may as well be exercised without making compensation as with it, for there is no provision in the Constitution that just compensation shall be made to the owner when his property shall be taken for private use. The power of making contracts for the sale and disposition of private property for individual owners has not been delegated to the legislature, or to others, through or by any agency conferred on them for such purpose by it; and if the title of A. to the property can, without his fault, be transferred to B., it may as well be effected without as with a consideration. After citing and commenting upon some authorities, the judge concludes by holding the act void, and that a good title was not acquired by a deed given pursuant to a sale made under its provisions. The court unanimously concurred in this conclusion. The only difference between that and the present case is, that in that the existing children of the testator's daughter Eliza, to whom the fee was given in case their mother died in their lifetime, were not required to be, and were not made parties to the proceeding, while in the present, Henry Brevoort, the only child of Mrs. Brevoort, was so required by the act, and was a party. This difference will be hereafter considered.

The counsel for the respondents insists that the principle upon which *Powers* v. *Bergen* was decided was modified or restricted by the same court in *Leggett* v. *Hunter* (19 N. Y., 446). In the latter the court held, first, that the trustee had power, under the will, to sell and convey the lands in question in the absence of any act of the legislature conferring authority for that purpose upon him, and also that the act by which such authority was conferred was constitutional and valid. It appears, from the report, that all the members of the court concurred in the result, and that the necessary number to

decide concurred upon both points. The report shows that it was not designed in the latter to overrule the former upon the point last considered in the opinion, but to distinguish the case then under consideration from that. In *Leggett* v. *Hunter*, it appeared that Gerardus Post was owner in fee at the time of his death; that he left five children, three sons and two daughters, surviving; that, by his will, he devised one-fifth of his real estate to each of his sons in fee, and two-fifths thereof to trustees during the lives of his two daughters, one in trust for each daughter during her life, remainder in fee to her issue. The will made no devise over, in case the daughter died leaving no issue. It appeared that the daughter who was entitled to the income of the lands in question, for life, had children who were infants at the time of the passage of the act and of the sale, the validity of which was the question involved in the questions submitted. Clearly as to these infants the statute and sale were valid by all the authorities, and valid, as we have seen, as to any after-born children of the daughter. The latter point is discussed in the opinion, and the conclusion adopted that the sale under the act would be valid as to such children. But nothing is said in the opinion as to the rights of the adult heirs of the testator in case the daughter died without issue. This remainder was undisposed of by the will, and descended to the heirs of the testator. The case is entirely silent as to this; and whether at the time these heirs or any of them, except the daughter, were adults, does not appear. In the opinion the judge says: " The court decided, in *Powers* v. *Bergen*, that the legislature (except in cases of necessity arising from infancy, insanity or other incompetency of those in whose behalf it acts) has no power to authorize by special act the sale of private property for other than public uses without the consent of the owner." This is a correct statement of the point decided. He then proceeds to state that in that case no reason appeared, and then, as I think, losing sight of the only reasons upon which such legislation can be sustained, proceeds to distinguish that case from that he was considering, by showing the probably

great pecuniary benefits to be derived from a sale in the one then in judgment. The power cannot be based upon such considerations. The great confusion of titles that would ensue by holding the sale valid if advantageous to the parties interested, but if otherwise invalid, must have escaped the attention of the learned judge. As already remarked, when power is given to the legislature to do an act, it includes the power of determining conclusively whether its exercise is expedient in the particular case. *Leggett* v. *Hunter* did not assume to determine that the legislature had power to authorize the sale of the private property of adults without the consent of the owner, other than for public use, however advantageous it might be.

*In the Matter of the Petition of the Trustees P. E. School &c.* (31 N. Y., 574), it was held that the legislature had power to authorize the sale of land for the payment of taxes and assessments thereon, and *Powers* v. *Bergen* was referred to as correctly decided; referring to that case, DENIO, C. J., says: It has been decided by this court that the legislature has no constitutional power to cause land to be sold for the purpose of disentangling an estate, where the parties entitled to future estates are under no disability to act for themselves, though it is fully admitted that it may be done when the rights of infants, lunatics, etc., are concerned. This must be regarded as the settled law of the State, although in conflict with *Sohier* v. *Mass. General Hospital* (3 Cushing, 483).

The cases cited, holding that the legislature have power to change existing joint tenancies into tenancies in common, and thereby destroy the right of survivorship, have no bearing upon the question under consideration. (*Bombaugh* v. *Bombaugh*, 11 Sergeant & Rawle, 191; *Miller* v. *Miller*, 16 Mass., 61; *Holbrook* v. *Finney*, 4 id., 586.) *Jacobson* v. *Babcock* (16 N. Y., 246) holds the act (chap. 327, Laws of 1855), providing for the sale of land for the payment of taxes, etc., constitutional and valid. *Rockwell* v. *Nearing* (35 N. Y., 302), *Campbell* v. *Evans* (45 N. Y., 356), and *Happy* v. *Mosher*, relate to other questions, and afford

no light upon the present case. *Striker* v. *Mott* (28 N. Y., 82) is cited by counsel to show that the heirs of the children of the testator's brother, John, have no such interest in the lands as can be alienated by them. That case arose upon a will which took effect in 1819, before the passage of the Revised Statutes; sections 9, 10, 13, 14, 16, 25, and other sections of article 1 (1 Stat. at Large, 670), show that these heirs had an estate in expectancy, contingent upon the death of Mrs. Brevoort without issue surviving; section 35 makes such estate descendible, devisable and alienable, in the same manner as estates in possession.

It is insisted by the counsel for the respondent that the act in question should be sustained, for the reason that some of the heirs are infants, and that the legislature has the power to authorize the sale of the interests of these infants. But this does not confer the power to authorize ,a sale of the interests of the adults without their consent.

It is further insisted that although the legislature may not have the power to authorize the sale of an estate in possession, or a vested estate in expectancy of an adult without his consent, yet it can authorize the sale of a contingent estate in expectancy. I can see no reason for the distinction. An owner *sui juris* is equally competent to determine and manage for himself in the one case as in the other. The foundation of the power of the legislature to act in behalf of any owner is the want of capacity to act for himself, and this reason no more extends to the case of a contingent than to a vested expectant estate. The question as to whether the interests are vested or contingent is not material and will not be discussed.

It is obvious that the fact that Henry Brevoort being a party can have no bearing upon the power of the legislature to sell without their consent the interest of the heirs of the testator's brother John. For this purpose he no more represents, and has no more power to affect their rights than a stranger to the title. He may bind his own rights by his acts but not those of others. My conclusion is that the deed

tendered would not have conveyed to the appellants an indefeasible title in fee to the premises purchased by them.

The judgment must therefore be reversed and judgment given for the defendants upon the demurrer to the complaint.

All concur.

RAPALLO, J., expresses no opinion as to power of legislature to cut off contingent remainder-men or persons not in being.

Judgment accordingly.