WILLIAM EBLING, Plaintiff, *v.* HENRY DREYER, Defendant.

*Will devising land in parcels — power of the Legislature to authorize the sale of the interests of infants therein — it cannot direct the deduction of the value of life estates on separate parcels from the gross proceeds.*

The will of a testator contained the following clause : "*Item.* The piece of ground owned by me in Westchester county, on Union avenue and Westchester road, I order and direct to be divided into 4 equal parts or shares lengthwise ; the part or share fronting on the Westchester road I give, devise and bequeath to my son Joseph ; the part next adjoining to my daughter Annie ; the part next adjoining to my daughter Sarah, and the part next adjoining to my daughter Elizabeth, the land so devised to be held by them respectively during their natural lives, and upon their deaths respectively to their respective children forever ; subject, however, to the dower interest of my said wife."

*Held,* that each one of the testator's four children, having children at the testator's death, took a life estate in a separate parcel of land, and his or her children took a vested remainder in the same parcel, subject to open and let in afterborn children.

That none of the four children or their children, born or unborn, had any vested or contingent interest in more than one parcel of land.

Under the Constitution of the State of New York the Legislature may, by a public or private act, authorize the sale of the real estate of infants or other persons *non sui juris,* and a sale made in pursuance of such an act will divest the title of such persons if it appear that reasons existed justifying such sale,

provided that contingent interests, if there are any, are protected; but the Legislature has no power to authorize the sale of four separate pieces of land in which four separate families of infants are severally interested, and direct that the avails of the sales be brought into a common fund, and that the liens and interests of the life tenants be deducted from the entire fund, based on the average age of all of the life tenants, as the effect of such an act would be to give the property of some of the infants to others.

(PARKER, J., dissenting from the result.)

SUBMISSION of a controversy upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

*Rudolf Dulon,* for the plaintiff.

*Edward E. Sprague,* for the defendant.

FOLLETT, J.:

June 1, 1892, the litigants entered into a written contract by which the plaintiff agreed to sell, and the defendant to purchase, certain real estate for $3,400, the title of which was to be conveyed in fee simple and free from incumbrances. The defendant paid $340 towards the purchase price and $68 fees of the auctioneer and salesroom. The contract was to be closed and the premises conveyed July 6, 1892, when the plaintiff tendered a deed sufficient in form, which the defendant refused to accept on the ground that the plaintiff was unable to vest the defendant with an absolute title to the land in fee simple. The question submitted is whether the plaintiff is able to convey the real estate to the defendant by a good title in fee simple. The plaintiff demands a judgment for the remainder of the purchase price, $3,060, with interest from July 6, 1892, with costs, and the defendant demands a judgment for $408, the amount of the sums paid by him, with interest from July 6, 1892, with costs.

August 11, 1863, Joseph Cudlipp died seized in fee simple of nine and eighty-five-one-hundredths acres of land in the town of Morrisania, which he devised as follows:

" *Item.* The piece of ground owned by me in Westchester county, on Union avenue and Westchester road, I order and direct to be divided into 4 equal parts or shares lengthwise; the part or share fronting on the Westchester road I give, devise and bequeath to my son Joseph; the part next adjoining to my daughter Annie;

the part next adjoining to my daughter Sarah, and the part next adjoining to my daughter Elizabeth, the land so devised to be held by them respectively during their natural lives, and upon their deaths respectively to their respective children forever; subject, however, to the dower interest of my said wife."

September 22, 1863, the will was duly admitted to probate and recorded. The testator left him surviving the four children mentioned in said devise, who were his only heirs, and a widow, who died February 13, 1869. When he died his daughter Elizabeth was married and had five children. His daughter Sarah had no children when he died or when the land was sold, but now has children. It does not appear whether Joseph or Annie had children at the testator's death, but if either had they died before the land was sold, for it appears by the submission that the children of each living when the land was sold were born since the death of the testator.

By the devise every one of the four children, having children at the testator's death, took a life estate in a separate parcel of land, and his or her children a vested remainder in the same parcel, subject to open and let in after-born children. These devises to the four children and to their children respectively were as distinct and separate as though the four parcels had been situate in different townships. Elizabeth and her children took the title to the parcel (No. 4) devised to them, but they had no interest, legal or equitable, in any one of the other three parcels, and none of the other three life tenants or their children had any title to or interest in the parcel devised to Elizabeth and to her children. None of the four children, or their children, born or unborn, had any vested or contingent interest in more than one parcel.

This being the situation of the title, an act was passed May 2, 1872 (Chap. 479, Laws 1872), by which the Supreme Court was authorized, upon the application of the four children and their legal issue in being, to sell in fee simple absolute said lands or any part thereof, at one time or at different times, as might be adjudged to be expedient. The act provides that if the court should order a sale of the premises a referee should be appointed, under whose direction it should be made, who should convey the premises sold upon the court's confirming the sale. The act declared that the con-

·veyances made pursuant to such authority should vest in the purchaser or purchasers the fee simple absolute against all persons having any interest in the land under said last will, whether in being ·or not.

The 4th section provides that the referee pay the expenses of the sale, all unpaid taxes, liens and charges on the land, and pay the residue to such trust company as the court may direct, to be invested in the name of the treasurer of the county of Westchester, on bonds secured by mortgages upon real estate in this State, for the benefit ·of such persons as are or may become interested in such lands. The ·act provides that the life tenants (they consenting) be paid a gross ·sum in lieu of their several life interests in the premises, pursuant to section 52 of title 3, chapter 5 of part 3 of the Revised Statutes.

On the 8th of August, 1872, the petition to the Supreme Court was verified by the four children of the testator, and by all of their children, then of the age of fourteen years and upwards, and by Charles A. Flammer, the next friend and guardian of all of their ·children under fourteen years of age, praying that the real estate be sold pursuant to the provisions of said act. The petition contains allegations sufficient to authorize the sale of real estate of infants pursuant to the general statutes of this State. A guardian *ad litem* was appointed for the infants, and a referee to inquire as to the truth of the allegations set forth in the petition, who reported that a sale of the lands would be for the benefit of all of the parties in interest.

Upon this report the court directed the referee to subdivide the tract composed of the four parcels into ordinary city lots, make a ·map thereof, file it in the office of the register of deeds of West-·chester county, and sell the lots. The tract was subdivided into 118 lots, and a map made of it and filed. Nos. 28, 29, 30, 31, 32, 33, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 75, 76, 77, 78, 79, 80, 81, 113, 114, 115 included some of the land devised to Joseph and his children (parcel No. 1) and some of the land devised to Annie and her children (parcel No. 2). Lots Nos. 8, 22, 23, 24, 25, 26, 27, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 88, 89, 90, 91, 92, 93, 94, 105, 106, 107 included some of the land devised to Annie and to her children (parcel No. 2) and some of the land devised to Sarah ·and to her children (parcel No. 3).

The land which the plaintiff agreed to convey, and the defendant to purchase, embraces lots 88, 89, 90 and the east half of 91, the greater portions of which were devised to Sarah and to her children and portions of which were devised to Annie and to her children.

The order directed the referee to pay the expenses of the sale, attorneys' fees and the liens for taxes, and then pay the residue to a trust company, to be invested by it on bonds secured by mortgages on real estate, within this State, for the benefit of such persons as are or may become interested in said lands, premises and real estate.

Whether all of the parcels were of equal value or whether the liens for assessments were for equal amounts on every parcel, does not appear. Take, for example, the parcel devised to Elizabeth and to her children, the title to which vested on the death of the testator, the act does not provide that the value of her life estate, computed with reference to her age, shall be paid to her and the remainder invested for her children, but in some way the supposed value of the four life estates was deducted from the avails of the sale of the four parcels after deducting expenses and assessments. It seems that the interests of the life tenants were arrived at by averaging their ages, their average expectation of life being fixed at thirty-one years.

The act provides no means for determining the value of the different parcels and for distributing the values of each parcel to each family according to its value, but all of the values are, by the act, to be mingled in a common fund.

By this act of the Legislature and the proceedings thereunder the infant owners of the part of the least value were given part of the values arising from the sale of the parcels of the greatest value, and the infant owners of the parcel of the greatest value have been compelled to give part of their property to the owners of the parcels of the least value. Again, the children of each life tenant had the right to have the gross value of the life estate of their father or mother ascertained with reference to his or her age, which was not done. The children of the oldest life tenant, apparently Elizabeth, had the right to have the value of the life estate of their mother determined according to her age, and not by the average age of all of the life tenants, who were younger, for by this means part of the interest of Elizabeth's children was taken from them and given to the other life tenants and to their children.

The life tenants had no interest in common in these parcels, nor had the children of any one of the life tenants any interest in common with the children of the other life tenants in the parcels. They had no interest which could be partitioned. The fact that the four separate parcels were contiguous is not a controlling or material fact, for the act is open to the same objections that it would have been had the parcels not been contiguous. This act authorizes these four parcels to be sold, not separately, and the avails of every parcel invested for those interested in the particular parcel after paying the liens thereon, but the assessments on all of the parcels are to be deducted from the avails derived from the sale of all of the lands. We have looked to see if this sale made under this act can be sustained on the ground that it was necessarily made for the payment of taxes, but such a necessity is not shown to have existed, at least for the sale of the entire tract; and, again, every one of the parcels was not sold, or assumed to be sold for·taxes, which were a lien on it, but all the parcels were sold and the amount of the liens on all were paid from the proceeds arising from a sale of the four parcels.

Under the Constitution of this State ·the Legislature may, by a public or private act, authorize the sale of the real estate of infants or of persons not *sui juris,* and a sale made in pursuance of such an act will divest the title of such persons if it appear that reasons existed justifying the sale (*Cochran* v. *Van Surlay,* 20 Wend. 365; *Powers* v. *Bergen,* 6 N. Y. 358; *Leggett* v. *Hunter,* 19 id. 445; *Brevoort* v. *Grace,* 53 id. 245), provided that contingent interests, if there are any, are protected. (*Brevoort* v. *Grace, supra; Monarque* v. *Monarque,* 80 N. Y. 320; *Kent* v. *Church of St. Michael,* 136 id. 10.) But these cases are no authority for the position that the Legislature may authorize the sale of four separate parcels of land in which four separate families of infants are severally interested, and that the avails of the sale be brought into a common fund, and that the liens and the interests of the life tenants be deducted from the entire fund based on the average age of all of the life tenants. The effect of such an act would seem to be to give the property of some of the infants to others, which we are not prepared to hold to be within the power of the Legislature.

If, by reason of facts existing at the testator's death, and not clearly disclosed by this submission, any one of the four children

took the fee of his or her parcel, his or her assent to the mode of sale adopted divested him or her of title. But this question has not been argued, and the facts are not sufficiently presented by the submission to authorize the court to determine it.

We do not declare the act of the Legislature unconstitutional, and the procedure had thereunder wholly ineffectual to divest the title of all of the children of the four life tenants, because this submission relates to a small part of the land, and the owners of the other lots into which the land was subdivided are not before the court, and there may be facts not contained in the submission which might influence the result. The title of the present owners of other lots should not be condemned without their being heard, but we are of the opinion that the title tendered by the plaintiff to the defendant is so doubtful that the latter should not be required to perform the contract.

A judgment should be ordered in favor of the defendant for $408, with interest from July 6, 1892, with costs.

VAN BRUNT, P. J., concurred.

PARKER, J. (dissenting):

Plaintiff and defendant entered into a contract for the sale and purchase of certain lands, of which the premises in controversy constitute a part. Defendant refused performance, assigning as a reason that plaintiff was unable to give him a good and marketable title. Plaintiff's predecessor in title, Joseph Cudlipp, by his will, admitted to probate in the year 1863, devised such lands as follows:

" *Item.* The piece of ground owned by me in Westchester county, on Union avenue and Westchester road, I order and direct to be divided into four equal parts or shares lengthwise; the part or share fronting on the Westchester road I give, devise and bequeath to my son Joseph; the part next adjoining to my daughter Annie; the part next adjoining to my daughter Sarah, and the part next adjoining to my daughter Elizabeth, the land so devised to be held by them respectively during their natural lives, and upon their deaths respectively to their respective children forever; subject, however, to the dower interest of my said wife."

Thereafter the Legislature, by chapter 479 of the Laws of 1872, enacted that, on the application of the four life tenants and their

FIRST DEPARTMENT, JUNE TERM, 1894. [Vol. 79.

lawful issue in being, the Supreme Court might authorize the sale in fee simple absolute of the lands so devised, or any part or parts thereof, at one time or from time to time, as might be adjudged to be expedient and calculated to promote the interest of those who would be entitled to the lands upon the deaths of the life tenants, according to the provisions of the will, whether in being or not, or whether having a present or contingent interest in the land. It further provided the practice to be adopted by which such matters as should be passed upon by the court should be properly brought before it for consideration and determination.

At the time of the passage of the act the only persons having an interest in the premises by virtue of the devise, who were of full age, were the four life tenants. So the Legislature, by requiring that the proceedings for the sale should not be had unless upon the petition of the life tenant, did not come in conflict with the decision in *Powers* v. *Bergen* (6 N. Y. 358) and *Brevoort* v. *Grace* (53 id. 245), in which cases it was held that the Legislature is without constitutional authority to authorize by special act the sale of private property belonging to adults.

The practice required by the statute obviated the difficulty which was presented in *Brevoort's* case. But while the cases cited *supra* deny the right of the Legislature to authorize the sale of the private property of adults for other than public use, without their consent, they determine the law to be that the Legislature may, by special statute, authorize a sale of the lands of infants or other incompetents in behalf of whom the Legislature acts, because they cannot act for themselves, and this power extends to the future contingent interest of those not in being.

The Legislature having power to authorize the sale, the manner in which the matter shall be brought to the attention of and passed upon by the courts in determining whether such a condition exists as the Legislature had in contemplation in passing the act, to wit, a condition which requires a sale in order to subserve the best interests of the infant remaindermen, as well as the future contingent interest of those not in being, is a question which the Legislature had full authority to determine. Now, after the passage of the act proceedings were instituted in the Supreme Court in conformity with its provisions. The petition set forth the facts which the peti-

tioners alleged show the necessity for a sale, and contained a prayer that the property be sold, and was signed by all the adults having an interest of any kind in the premises.

The petition, in stating the reasons for the expediency of the sale, among other things, set forth that the land, which consisted of about ten acres, was wholly unproductive; that its assessed value was many times greater than at the testator's death; that the taxes were exceedingly large and will greatly increase from year to year; that the means of the four life tenants were small; that their children had no property except the interest in the property devised, and unless sold the land would become so incumbered by taxes and assessments and sales thereof as to leave the interest of the remaindermen of little or no value.

The result of the proceedings was an adjudication by the court that a sale was expedient and calculated to promote the interests of those who would be entitled to the land under the testator's will, whether in being or not, or having a present or contingent interest. This question the court was authorized to determine by the statute providing that the proceedings should be instituted, and the necessary steps having been taken to invest it with jurisdiction as to all of the parties, whether in being or not, its determination was final and cannot be subjected to collateral attack. Indeed, it is hardly probable that any objection would have been taken but for the existence of the fact now to be stated.

By the devise the lands were divided into four equal parts, the use of each one of the parts specified being given to one of his children during life, and upon death the fee to his or her children. Now, after the will was admitted to probate, but before the passage of the act of 1872 (*supra*), the commissioners of taxes and assessments, in pursuance of chapter 841 of the Laws of 1868, laid out streets through such premises, both lengthwise and crosswise, and duly made and filed maps in conformity therewith.

The method adopted by the commissioners in laying out these streets did not conform to the line of division as fixed by the testator, and as a result the third part, for instance, which was devised to the use of his daughter Sarah, had no frontage whatever upon a street running lengthwise through the property, while the second part, the use of which was given to the daughter Annie, during life,

had a frontage upon the street upon both sides, but the lots had but little depth.

The result of laying out the streets through the lands was to increase the value of one of the devised parts more than others, and it is claimed that for such reason the four parcels should have been separately sold, so that the parcels deriving the greater advantage from the said improvement should realize, for the benefit of those interested therein, a proportionately enhanced sum.

The first impression suggested by this statement is that defendant's contention is somewhat plausible, but a moment's reflection shows it to be without merit, for the reason tersely and clearly stated in *Matter of Field* (131 N. Y. 184): "The proceeds, which thus take the place of the land, are still to be treated as land for the purpose of measuring all rights therein, and their preservation is secured by requiring them to be paid into court and invested under its direction." (See, also, *Kent* v. *Church of St. Michael,* 136 N. Y. 10.)

The result of the proceedings and the sale had thereunder has been to substitute the money, which represents the value of the land, in its place. No attempt was made to determine the rights of the several parties therein as between themselves other than the life tenants, and when the time comes for the distribution of the proceeds of the property among those entitled to it, the court can and will, if properly requested, inquire concerning it and determine the rights and interests of the several parties.

It is urged that the determination of the gross value of the several life estates and their payment out of the fund, in the manner authorized by the statute, constitutes a fatal defect. Not so if the position already asserted be sound, that the intent and legal effect of the statute was to substitute the proceeds of the sale for the land sold, to be thereafter apportioned according to the rights of the several parties interested. For the life tenants in the aggregate received no greater sum than would have been awarded to them had a division of the fund been made before computing the value of their respective estates.

It may well be that, as between the life tenants, there has not been such a division as should have been made. But, as they are alone interested in such injustice as may have resulted, there is no source

from which legal complaint can flow, as they have consented to the basis adopted for distribution and accepted the payments made thereunder.

What proportion of the aggregate amount paid out in satisfaction of the several life estates shall be borne by each of the four separate estates must be determined by the court when it comes to adjudicate upon the value of the several interests and decree distribution.

That which was done cannot be questioned, because the Legislature had power to authorize it, to wit, a sale of the property after a determination by the court that there existed a situation which rendered it expedient and necessary that a sale would be had. And the proceeds, having been paid into court, now stand in the place of the land for which it was paid, and it is of no consequence, so far as the title is concerned, when the court shall undertake to determine the rights of the several parties, nor how it shall be determined.

The proceedings having been regular, it is to the fund and not to the land that those, in whose behalf and interests the sale was made, will have to turn, in order to secure that which of right belongs to them.

Not only was the procedure adopted in selling the property regular, but it was wise from a business standpoint, for in no other way could so much money have been realized from it.

I advise that judgment be entered in favor of the plaintiff for a specific performance as demanded in the submission, with costs.

Judgment ordered in favor of defendant for $408, with interest from July 6, 1892, with costs.