Lansing, Ch. J.
In determining this case, it is necessary to consider the intent of the parties as to the deed in ques *135 tion. From the whole- transaction, it was evidently their intent that Wareham, the purchaser, should not have the land until the consideration money was paid. All the acts of the parties were directed to this object, and if it can be maintained consistently with established principles, every reasonable construction in its favor ought to be admitted.
It is not necessary, in my opinion, to enter into the doctrine of equitable mortgages. It is true the deed was executed, attested, and acknowledged, and every step preparatory to the-consummation of the title had been regularly taken ; but in every stage the deed remained in the power of the grantor, and after all the formalities had *been [*116] complied with, it was agreed that the grantor should retain it in his hands until the consideration money should be paid, and Wareham declared he would not accept it until that was done. Although formally executed, the deed was, therefore, in fact not delivered. It was in substance a conditional execution, and not otherwise claimed or accepted by the grantee.
It is also essential to the legal operation of a deed, that the grantee assents to receive it. It cannot be imposed on him, and there can be no delivery without an acceptance.(a) On *136 this ground, for the want of a delivery in- fact; I am of opinion, that-the execution of the deed on strict principles was inoperative, and did not' pass the estate to the grantee.
*137 . Radge iff, J., Benson, J., and Lewis, J. concurred. Kent, J. Here was a delivery in due form, and duly *138 acknowledged before an officer attending for the purpose. The intent of the parties was5. that the deed should be com *139 pleted, and should then be retained by the grantor by way of security till payment. This was the creation of an equitable lien in the grantor ; but such a lien or equitable mortgage cannot be set up at law, as a legal estate.
I am, therefore, of opinion, that the plaintiff ought to recover.
Judgment for the plaintiff.

.) In this .case, there was an express agreement that the grantor should retain the the deed, until the consideration money was paid, and, of course, no delivery by him could be inferred : for, though a deed may operate by a presumed assent, as we shall see hereafter, until a dissent appears, yet it will then become inoperative, for no person can be made a grantee against his will, and without his agreement. Thompson v. Leach, 2 Ventris’ R. 198. 3 Preston on Abstracts, 104. An actual assent or acceptance of the grantee, is not necessary to the delivery of a deed, nor yet an assent or acceptance inferrible from circumstances known to the grantee ; but, on the contrary, an assent to, or acceptance of such a deed for his benefit, will be presumed, though he be ignorant of such deed, unless there be facts to rebut such presumption. Church v. Gilman, 15 Wend. 656. Jackson v. Phipps, 12 Johns. R. 421, per Spencer, J. Verplank v. Sterry, id. 550, per Spencer, J. Jackson v. Bodle, 20 id. 187, per Spencer, Ch. J. Belden v. Carter, 4 Day’s R. 66. Wheelright v. Wheelright, 2 Mass. R. 447. Hatch v. Hatch, 9 id. 307. Ruggles v. Lawson, 13 Johns. R. 285. Hedge v. Drew, 12 Pick. R. 141; and see Barns v. Hatch, 3 N. H. R. 304. Maynard, v. Maynard, 10 Mass. R. 456. Herbert v. Herbert, 1 Breese’s R. 382. Chess v. Chess, 1 Penn. R. 32. Beers v. Broome, 4 Conn. R. 247.
*136 In England, it seems to have been considered, that Where a deed is duly signed and sealed, and formally delivered, with apt words of delivery, but is retained by the party executing it, that retention, will' not obstruct the operation of the deed. In Barlow v. Heneage, Free. Cha. 211, George Heneage executed a deed purporting to convey an estate to trustees, that they might receive the profits, and put them out for the benefit of his twq daughters, and gave bond to'the same, trustees conditioned to pay to them 10001. at a certain day, in trust for his daughters;- but he kept both deed and bond in his own power, and received.the profits of the estate till he died: he noticed the bond by. his will, and gave legacies to his daughters in.fujl satisfaction of it, but the daughters elected to have the benefit of the deed and bond, and filed a bill in equity accordingly. It was urged, that the deed and bond being voluntary, and always kept by the father in his own hands, were to be taken as a cautionary provision' only. Lord Keeper Wright said, these were the father’s deeds, and he could not derogate from them, and the parties having agreed to set the maintenance of the daughters against the profits received by the-father from the estate, he decreed upon the bond only, but -that decree was, that interest should be paid upon the bond'from the time when the condition' made the - money payable. In Clavering v. Clavering, Prec. Cha. 235, 2. Vern. 473, l. Bro. Pari. Cas. 122,, Sir James Clavering settled an estate upon one son in 1684, and in 1690 made a settlement of the same estate upon another son: he never delivered out or published the settlement of 1684, but had it in his own- power, and it was found after his death amongst his waste papers. (See 2 Vern. 474, 4-75.) A bill was filed under the settlement of 1690, for relief against the settlement of 1684; but Lord Keeper Wright held, the relief could not be granted, and observed, that though the settlement of 1684 was always in the custody or power of Sir James, that did not give him a‘power to resume the estate, and he dismissed tile bill. In Lady Hudson’s case, cited by Lord Keeper Wright, a father, being displeased with his son, executed a deed giving his wife 1001. per annum in augmentation of her jointure ; he kept-the settlement in his own power, and on being reconciled to his son, cancelled'it. The wife found the deed after his death, and on a. trial at law, the deed being proved to have been executed, was adjudged good, though cancelled, and the son having, filed'a bill in'equity to be relieved against the deed, Lord Somers dismissed the -bill. In Naldred v. Gilliam, 1 Pr. Wms. 577, Mrs: Naldred in 1707 executed a. deed, by which she covenanted to stand seised to the use of herself; remainder to a .child of three years old, a nephew, in fee. She kept this deed in her possession, and afterwards burnt it and made a new settlement; a copy Of this deed having been surreptitiously, obtained before the deed was burnt, a bill was filed to'eslablish this copy,, and. to have the second settlement delivered up; and Sir Joseph Jekyl determined, with great clearness, for the plaintiff, and granted a perpetual injunction *137 against the defendant, who claimed under the second settlement. It is true, Lord Chancellor Parker reversed this decree ; but it was not on the ground that the deed was not well executed, or that it was not binding, because Mrs. Naldred had kept it in her possession, but because it was plain that she intended to keep the estate in her own power; that she designed that there should have been a power of revocation in the settlement; that she thought while she ha'd the deed in her custody, she had also the estate at her command ; that, in fact, she had been imposed upon by the deed’s being qoade an absolute conveyance, which was unreasonable, when it ought to have had a power of revocation, and because the plaintiff, if he had any title, had a title at law, and had, therefore, no business in a court of equity. Lord Parker’s decision, therefore, is consistent with the position that a deed, in general, may be valid, though it remains tinder the control of the party who executes it, not at variance with it; and so it is clearly considered in Boughton v. Bough-ton, 1 Atkyns, 625. In that case, a voluntary deed had been made, without power of revocation, and the maker kept it by him. Lord Hardwieke considered it as valid, and acted upon it; and he distinguishned it from Naldred v. Gilham, which he said was not applicable to every case, but depended upon particular circumstances: and he described Lord Macclesfield as having stated, as the ground of his decree, that he would not establish a copy surreptitiously obtained, but would leave the party to his remedy at law, and that the keeping the deed (of which there .were two parts) implied an intention of-revoking, (or rather of reserving a power to revoke.) Upon these authorities, it seems to me, that where an instrument is formally sealed and delivered, arid there is nothing to qualify the delivery but the keeping the deed in the hands of the executing party, nothing to show that he did not intend.it to operate immediately, that it is a valid and effectual deed, and that delivery to the party who is to take by it, or to any person for his use, is not essential. I do not rely on Doe v. Roberts, 2 Barn. & A. 367, because there the brother who executed the deed, though he retained the title deeds, parted with the deed which he executed.” But see Cecil v. Butcher, 2 Jac. & Walk. 573, where it is held that a -voluntary deed, never parted with, executed for a purpose that has never been completed, is considered, in equity, as an imperfect instrument.
And it has been determined that delivery of a deed to a third person, for the use of the party in whose favor it is made, where the grantor parts with all control over the deed, makes it effectual from the instant of such delivery. The law will presume, if nothing appear to the contrary, that a man will accept what is for his benefit. 11 East, 623, per Lord Ellenborougb. “ Shepherd, who is particularly strict in requiring that the deed should pass from the possession of the grantor, (and more strict than the cases I have stated imply to be necessary,) lays it down that delivery to the grantee will be sufficient, or delivery to any one he has authorized to receive it, or delivery to a stran *138 ger for Ms use -and.on Ms behalf Shop. 57. And 2 Roll. Abr. ;K) 24, pi. 7; Taw v. Bury, Dyer, 167 b, 1 Anders. 4, and Alford. v. Lea, 2 Leon, 111; Cro. Eliz. 54, and 3 Co. 27, are clear authorities, that, on a" delivery to- a stranger for the use and on the behalf of the grahtee, the deed'will operate instanter, and-its operation will not be postposed till it is delivered over to or accepted by the grantee. The passage in Rblle’s Abridgment is this: ‘ If a man make an obligation to I.,'and deliver it to B.„ if I. get the obligation, he shall have action Upon it, for it shall be intended that B. took the deed for him as his servant, 3 H. 6, 27.’ The point is put arguhndo by Paston, Serjt., in 3. H. 6, who adds, * fór a servant may do what is for his master’s advantage, what is to his disadvantage not.’ In Taw v. Bury an exe'cutorsued upon a bond: the defendant pleaded, that he caused the bond to be written and sealed, and delivered it to Calmady to deliver to the testator as defendant’s deed; that Calmady offered to deliver it to testator as. defendant’s deed, and the testator refused to accept it as such; wher'efofe Calmady left it with testator Sas a schedule, and not as defendant’s deed, and so non 'est factum. ' On demurrer on this and another 'ground, Sir Henry Brown and Dyer, Justices, held, that, first by the delivery of it to Calmady, without speaking of it: as the defendant’s deed, the deed was good, and was "in law the deed of defendant before any delivery over to the testator, and then testator’s refusal could not undo it as defendant’s deed from the beginning, and they gave judgment for the plaintiff, very much against the opinion of the Chief Justice Sir Anthony Brown, but others of the king’s bench, says Dyer, agreed to that judgment.. It was afterwards reversed, however,, for a discontinuance, in the pleadings. Sir A. Brown’s doubt might possibly be grounded' on this, that the delivery to Calmady was" conditional, if the testator would accept it; and if so, it would not invalidate the position, which alone is material here, that an unconditional delivery tp'a stranger for the benefit of the grantee will enure immediately to the benefit of the grantee, and will make the deed-a perfect deed, without any concurrence by the grantee. And this is further proved by Alford v. Lea, 2 Leon. 110. Cro. Eliz. 54. That was debt upon an arbitration bond; the award directed, that before the feast of St. Peter both parties 'should release to each other all a'dtiobs. Defendant executed a release on the •eve of the feast, and delivered it to Prim to the use of the plaintiff, but the plaintiff did not know of it until after the feast, and then he' disagreed to it, and- whether this was a performance ,of the condition Was the Question. It Was urged that it was not, for the release took no eflfect till agreement of the ■ releasee. It was answered-, It was immediately a release, and defendant could not plead non est factum,, or countermand it, and. plaintiff might agrée to it when he pleased. And it was adjudged to be a good performance of the .condition) no place being appointed for delivering, it, and the defendant might Slot be able to find the plaintiff, and they relied on Taw’s case. This, there- ’ fere, was a confirmation, at a distance of twenty-eight yearn, of Taw v. Bury; *139 and at a still later period (33 Eliz.,) it was again confirmed in the great case of Butler v. Baker, 3 Co. 26 b. ■ Lord Coke explains this point very satisfactorily. ‘ If A. make an obligation to B., and deliver it to C. to the use of B., this is the deed of A. presently. But if C. offer it to B,, there B. may refuse it in pais, and thereby the obligation will lose its force; (but, perhaps, in such case, A. in an action brought on this obligation cannot plead non est factum, because it was once his deed,) and therewith agrees Hil. 1 Eliz. Taw’s case, S. P. Bro. Ab. Donee, pi. 29. 8 Vin. 488. The same law of a gift of goods and chattels, if the deed be delivered to the use of the donee, the goods and chattels are in the donee presently, before notice or agreement; but the donee may make refusal in pais, and by that the property and interest will be divested, and such disagreement need not be in a court of record. Note, reader, by'this resolution you will not be led into error by certain opinions delivered by the way and without premeditation, in 7 Ed. 4, 7, &c., and other books obiter.’ (Gould, J., cites this doctrine, Salk. 301, in Wankford v. Wankford.)” Per Bayley, J., in Doe d. Garnons v. Knight, 5 Barn. & Cress. 671. S. C. 8 Dowl. & Ryl. 348. See also the observations of Qhancellor Kent upon the cases of Taw v. Bury, ut supra, Alford and Lea’s case, id. 4 Comm. 4§5, n. b.