In the Matter of the Appraisal, under the Transfer Tax Act, of the Estate of JANET S. LANSING, Deceased.

JANET L. McVICKAR et al., as Executors of JANET S. LANSING, Deceased, et al., Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

1. TRANSFER TAX — EXERCISE OF A TESTAMENTARY POWER OF APPOINTMENT WHICH TRANSFERS NOTHING, NOT SUBJECT TO TAX. Under a will taking effect in 1869, by which the testator devised one-half of his residuary estate to trustees for each of his children living at the time of his death, to hold the portion of each child in severalty, in trust during the life of such child, and after the death of such child her portion to go to her heirs at law, subject, however, to the power of such child to devise the remainder by will, in fee, to the heirs at law and collateral relatives of such child, in such proportion and manner and with such limitations as such child may desire to impose, the exercise of the power given by such will by a daughter who died in October, 1904, leaving a will dated April 25, 1892, whereby she devised her share of her father's estate held in trust for her benefit to her daughter in fee absolute, her only child and heir at law, and who was in being at the death of her grandfather in 1869, transfers nothing that was not given to her daughter by the will of her grandfather. At his death she took a vested interest in remainder; her rights were fixed by him, subject, however, to be defeated by the exercise of a power of appointment which changed them, not by one that left them precisely as they existed under his will; and, therefore, it must be regarded as a nullity; there was no transfer to her under the will of her mother, but under the will of her grandfather, and at that time there was no statute imposing a transfer tax. The imposition of such a tax, therefore, upon the theory that the trust property was transferred by the will of her mother, cannot be sustained, especially when she expressly disclaims deriving any title to such property under the power, and elects to reject it from that source; and the fact that she accepts property belonging to her mother under her will does not prevent her from rejecting the title tendered by the appointment, although both the gift and appointment are made by the same instrument.

2. FAILURE TO EXERCISE POWER. A contention that the failure or omission to exercise a power of appointment subjects the property to a transfer tax in the same manner as if the donee of the power had owned the property (L. 1897, ch. 284, § 220, subd. 5) is without force; where there is no transfer there is no tax and transfers made before the passage of the statute are not affected by it.

3. TRANSFERS PRIOR TO ENACTMENT OF STATUTE NOT AFFECTED. Assuming that the interest acquired under the grandfather's will was con-

tingent, nevertheless it was acquired at the instant of his death and became a property right which could not be cut down by the subsequent imposition of a transfer tax.

*Matter of Lansing*, 103 App. Div. 596, modified.

(Argued April 13, 1905; decided June 13, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1905, which affirmed an order of the New York County Surrogate's Court assessing a transfer tax upon a part of the residuary estate of Thomas Suffern, deceased, held in trust for the decedent Janet S. Lansing, during her life, and over which the said decedent was given a power of appointment.

On the 11th of April, 1869, Thomas Suffern, a resident of the city of New York, died, leaving a last will and testament which was admitted to probate by the surrogate of said county on the 17th of June following. The provisions of his will, so far as material on this appeal, are as follows :

"*Sixth.* All the residue of my estate, real and personal, divided into as many equal portions as I shall leave children and issue collectively of any deceased child me surviving, I give and devise as follows :

" One of said equal portions, I give and devise to the issue collectively of each of my children who shall have died during my life, leaving issue, to have and to hold to such issue in fee simple absolute. One other of said equal portions I give and devise to the persons hereinafter appointed as trustees for each of my children living at the time of my death to have and to hold such portion of each child in severalty, in trust during the life of such child and to receive the rent, issues and profits thereof during such life, and to apply the same to the use of such child during her life, and after the death of each of my children I give the portion so held in trust for her to her heirs at law, subject, however, to the power of such child to devise, hereinafter contained."

" *Eighth.* As to the portions of each of my children devised by the 6th item of this, my will, to the trustees for life of such child, and after the death of such child to the heirs at

law of such child, I hereby authorize each child by last will duly executed to dispose of the remainder in fee after the termination of the trust estate by her death among her heirs at law and her collateral relatives in such proportion and manner and with such limitations as she may desire, and I declare the devise of each remainder at the foot of the sixth item of this my will to the heirs at law to be subject to this power given to each of my children."

Among his surviving children was Janet S. Lansing, who died on the 13th of October, 1904, leaving a will which has since been admitted to probate by the surrogate of New York county. The only part of her will that is now material is the following :

" *Second.* Under and by virtue of the power and authority given to me in and by the last Will and Testament of my father, the late Thomas Suffern, and particularly in and by the Eighth Clause or subdivision thereof, I give, devise and bequeath, the equal share or portion of the estate of my said father, given and devised in and by the sixth clause or subdivision of his said Will to the Trustees appointed in and by the said Will in trust for me, to my said daughter, Janet Lansing McVickar, to have and to hold the same to her, her heirs and assigns forever, in fee simple and absolute ownership."

Janet S. Lansing left as her only child and heir at law Janet Lansing McVickar, who was in being when said Thomas Suffern died in 1869. Notwithstanding the objecjections presented by Mrs. McVickar, as well as by the executors of both wills, the surrogate imposed a transfer tax measured by the value of the property which came to her through the will of her grandfather and which was covered by the power of appointment contained therein as exercised by the will of her mother. The order of the surrogate was affirmed by the Appellate Division, and the parties so objecting appealed to this court.

*Edward B. Whitney* and *Winston H. Hagen* for Edward N. Tailer, as surviving executor and trustee of Thomas Suf-

fern, deceased. The entire Suffern interest is non-taxable. (*Matter of Merriam*, 141 N. Y. 479; *U. S.* v. *Perkins*, 163 U. S. 625; *Matter of Sherman*, 153 N. Y. 1; *Matter of Plummer*, 47 App. Div. 625; *Plummer* v. *Coler*, 178 U. S. 115; *Orr* v. *Gilman*, 183 U. S. 289; *Matter of Vanderbilt*, 163 N. Y. 597; *Matter of Delano*, 176 N. Y. 486.) The state could in no way have deprived Janet L. McVickar of her right of succession. (*Brevoort* v. *Grace*, 53 N. Y. 245; *Matter of Vanderbilt*, 172 N. Y. 69; *Moore* v. *Littel*, 41 N. Y. 66; *Surdam* v. *Cornell*, 116 N. Y. 305; *Dougherty* v. *Thompson*, 167 N. Y. 472; *Haug* v. *Schumacher*, 166 N. Y. 506; *Matter of Bostwick*, 160 N. Y. 489; *Crittenden* v. *Fairchild*, 41 N. Y. 289; *Powers* v. *Bergen*, 6 N. Y. 358; *Matter of Pell*, 171 N. Y. 48.)

*Stanley W. Dexter* and *H. Linsly Johnson* for Janet L. McVickar et al., appellants. The attempted exercise of the power of appointment by Janet S. Lansing was nugatory, as her sole heir, Janet L. McVickar, was already vested with the remainder in question, and the power as exercised did not divest it nor enlarge nor reduce the heir's proportion. (*Matter of Vanderbilt*, 163 N. Y. 597; 50 App. Div. 246; *Matter of Dows*, 167 N. Y. 227; *Matter of Rogers*, 172 N. Y. 617; 71 App. Div. 461; *Matter of Delano*, 176 N. Y. 486; *Matter of Stewart*, 131 N. Y. 274; *Matter of Pell*, 171 N. Y. 48.)

· *George M. Judd* and *Edward H. Fallows* for respondent. The 2d paragraph of the last will and testament of Janet S. Lansing is an exercise of the power of appointment conferred upon her by the 8th paragraph of the last will and testament of Thomas Suffern. Therefore, the appointees named in the will of the donee of the power take their respective shares thereunder, and not under the will of the creator of the power. (*Matter of Moehring*, 154 N. Y. 423; Farwell on ·Powers [2d ed.], 275; *Matter of Stewart*, 131 N. Y. 274; *Matter of Vanderbilt*, 50 App. Div. 246; *Matter of Delano*,

. 16

176 N. Y. 486.) The taxation of a transfer of property, passing under and by virtue of the exercise of a power of appointment, under the provisions contained in subdivision 5 of section 220 of the Tax Law (L. 1896, ch. 908), as added by chapter 284 of the Laws of 1897, has been repeatedly sustained by the courts. (*Matter of Vanderbilt*, 163 N. Y. 597; 50 App. Div. 246; *Matter of Dows*, 167 N. Y. 227; *Matter of Potter*, 51 App. Div. 212; *Matter of Seaver*, 63 App. Div. 283; *Matter of Walworth*, 66 App. Div. 171; *Matter of Rogers*, 71 App. Div. 461.) The contention that, for the purpose of the imposition of a transfer tax and within the meaning of said subdivision 5 of section 220 of the Tax Law, the property over which Janet S. Lansing by will exercised the power of appointment was transferred, not by and under the will of Janet S. Lansing, but by the will of Thomas Suffern, is not sound nor tenable. (*Matter of Dows*, 167 N. Y. 227; *Matter of Miller*, 110 N. Y. 216.) Any rights whatsoever which may have existed in heirs at law of Janet S. Lansing, by and under the will of Thomas Suffern, are inferior to the taxing rights of the state over the transfer of the property appointed by the will of Janet S. Lansing in favor of her daughter. (*Orr* v. *Gilman*, 183 U. S. 278; *Matter of Stewart*, 131 N. Y. 274.)

VANN, J. The property in question belonged to Thomas Suffern when he died in 1869, and there was then no statute in force which imposed an inheritance or transfer tax. Subsequent legislation could not authorize a tax upon the transfer of property effected solely by means of his will, with no aid from the power of appointment. (*Matter of Pell*, 171 N. Y. 48.) The property under consideration never belonged to the daughter, Mrs. Lansing, although she had the income therefrom during her life through a trust created for her benefit by her father's will. By the same sentence which created the trust during her life, the property was given after her death to the granddaughter, Mrs. McVickar, subject to the exercise of the power of appointment. That power was

limited to two classes of persons, consisting of the heirs at law and the collateral relatives of Mrs. Lansing. Mrs. McVickar was her sole heir at law and the power of appointment, as formally exercised, gave all the property to her the same as her grandfather had given it to her more than thirty years before. In other words, the attempt to exercise the power neither increased nor diminished the estate of Mrs. McVickar, and did not affect in any degree the value of her grandfather's gift. It did not effectively transfer any property whatever, for she took from her grandfather and nothing was added to or taken away from the gift by the exercise of the power through the will of her mother. The execution of the power left the title where it was before, and the result is the same as if there had been no power to exercise.

Mrs. McVickar was born before her grandfather died, and upon his death she took a vested interest in remainder, because she was "a person in being, who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate," created in trust for the benefit of her mother. (1 R. S. 723, § 13.) It was property which she could convey or devise. (Id. § 35.) While she could not take possession until the death of her mother, the state could not deprive her of the property thus vested in her and she needed no consent from the state that her mother might make a will in order to enter into full enjoyment upon the termination of the precedent estate. Her rights were fixed by the will of her grandfather, and unless changed pursuant to its provisions her estate in expectancy would become an estate in possession upon the death of her mother. While the situation was subject to change under the power of appointment, no change was made. Although the power was exercised in form, her title was perfect without it and she derived no benefit from it. The power was to "dispose of the remainder" and the remainder was not disposed of but continued where it was. The attempt to execute the power was not effective, because it did nothing. The exercise of a

power which leaves everything as it was before is a mere form, with no substance.

Taxes are generally imposed upon property, but the transfer tax is imposed upon the right of succession to property by means of a will, or through the Statutes of Descents and Distributions. In the case before us it was imposed for the privilege of making a will and thereby exercising a power of appointment. (*Matter of Dows*, 167 N. Y. 227, 231; *Matter of Delano*, 176 N. Y. 486, 491.) So far as the will of Mrs. Lansing gave her own property to Mrs. McVickar, there is no controversy as to the transfer tax, but in so far as it purported to give property that she never owned and which came from Thomas Suffern, the tax is resisted because it was imposed upon a mere formality which changed nothing and accomplished nothing and for the further reason that Mrs. McVickar elected not to accept under the appointment.

The power as it might have been exercised would have left Mrs. McVickar with no title at all, but as it was exercised it left her the same title that she had before. It gave her nothing and took nothing away from her. She is not forced to claim through the second clause of her mother's will, for she took under the will of her grandfather. She had the right of election and could refuse to take under the appointment and still hold the property, for her title was as good without as with the exercise of the power. Her attitude in this proceeding, both now and before the surrogate, is that she took wholly from her grandfather and in no respect through the action of her mother. She claims exclusively under him, so far as the property in question is concerned. She treats the exercise of the power as a mere attempt and not as an effective execution thereof. She declares that the property vested in her under the will of Thomas Suffern upon his death in 1869, and that she acquired no further interest therein through the will of her mother. She took this position in her affidavit presented to the surrogate, and in her formal objections she insisted that all the property passed to her directly from her grandfather by the sixth clause of his will; that nothing passed to her

through the appointment of her mother by the second clause of her will; that the power was not effectively exercised, and that it is not necessary to resort to the appointment in order to determine her share in the residuary estate of her grandfather. An exclusive claim under the one source of title is a disclaimer under the other. There is no evidence in the record that she ever accepted the appointment or claimed title through the exercise of the power, but on the other hand, it sufficiently appears that she elected to reject title from that source.

An appointee under a power has the right of election, the same as a grantee under a deed. "It is essential to the legal operation of a deed that the grantee assents to receive it. It cannot be imposed upon him, and there can be no delivery without an acceptance." (*Jackson* v. *Dunlap*, 1 Johns. Cas. 114, 116; *Jackson* v. *Phipps*, 12 Johns. 418.) He can accept the title tendered or reject it in his discretion. It cannot be forced upon him against his will. He cannot be compelled to receive additional evidence of title when he does not want it, and does not need it because his title is perfect without it. His consent is necessary before the attempt to exercise the power becomes binding upon him the same as consent is necessary in making a contract or agreement. Declining or refusing to take has the same effect as incapacity to take, as in the case of a devise to a corporation which has no power to hold any more property because the statutory limit has been exceeded. The title is not affected, but remains where it was before.

Mrs. McVickar, by accepting under her mother's will property which belonged to her mother at the time of her death, did not accept the title tendered by the appointment, although both gift and appointment were made by the same instrument. She could claim as the devisee of her mother and disclaim as her appointee, because a gift and an appointment are wholly unlike in character and substance. The gift was confined to property of the mother, while the appointment was confined to property which she never owned and which vested in the daughter through the will of her grandfather. No

condition was attached to either and each was independent of the other. While the mother could appoint, the daughter could reject. Mrs. McVickar could, therefore, repudiate the action of her mother in attempting to exercise the power and hold the property from her grandfather.

Her position is quite different from that of Mr. Carey, the appointee under a power in the *Delano* case, for while he could have taken an undivided fourth through the deed of his grandfather and could thus have escaped the transfer tax, in order to get the other three-fourths he was obliged to claim under the exercise of the power of appointment in the will of his aunt. He could not claim one-fourth under the deed and the remaining three-fourths only under the will, for he was bound to accept or reject under the will as an entirety, so far as it exercised the power of appointment. If he accepted under the power at all, he was obliged to accept all that purported to come to him thereby. Having elected to claim under the power, he was compelled to accept the appointment as it was made and take all the property covered thereby. He could not take the position that he accepted three-fourths only under the exercise of the power, for if he claimed from that source at all he accepted the title as a whole. (*Matter of Delano*, 176 N. Y. 486.)

In the *Cooksey* case, argued herewith, the devise of the remainder by the will of the grandfather was to such of the children of his daughter as she should appoint by will, and if she failed to thus appoint, title to the remainder was to vest in her children, share and share alike. It was not, however, to be paid over to them all at once but *not to exceed* $50,000 at the age of 21, a further sum of *not to exceed* $100,000 at the age of 25 and at the age of 30 the remainder with all accumulations. The power as exercised by the mother directed the payment of the entire sum of $50,000 at the age of 21, the full sum of $100,000 at the age of 25 and the remainder at the age of 30. She thus deprived the trustees of the right to exercise any discretionary power as to the amount of the payments, not exceeding the limit named, for

she excluded discretion by exhausting the limit. Under the will of the grandfather a grandchild might have been paid $5,000 instead of $50,000 at the earliest age named and but one dollar instead of $100,000 at the second period named. It, therefore, became necessary for the grandchildren to claim under the power of appointment as exercised by their mother in order to come into the possession of the largest sums mentioned at the ages named. Moreover, title to the remainder was to vest in them only upon the failure of the mother to appoint. If she exercised the power they could take under that source only, for they could not take under the will of the grandfather, as Judge Haight shows in his opinion. (*Matter of Cooksey,* 182 N. Y. 92)

So in the *Vanderbilt* and *Dows* cases the power was effectively exercised and it was necessary to resort to the will by which it was exercised before title could be established to the property claimed. (*Matter of Vanderbilt,* 50 App. Div. 246; 163 N. Y. 597; *Matter of Dows,* 167 N. Y. 227.)

We pass without serious discussion that part of the statute which provides, in substance, that the failure or omission to exercise a power of appointment subjects the property to a transfer tax in the same manner as if the donee of the power had owned the property and had devised it by will. (L. 1897, ch. 284, § 220, subd. 5.) Where there is no transfer there is no tax and a transfer made before the passage of the act relating to taxable transfers is not affected by it, because as we held in the *Pell* case such an act imposes no direct tax and is unconstitutional since it diminishes the value of vested estates, impairs the obligation of contracts and takes private property for public use without compensation. (*Matter of Pell,* 171 N. Y. 48; *Matter of Delano,* 176 N. Y. 486, 495.)

After the death of Mr. Suffern and the vesting of the remainder in Mrs. McVickar no statute could prevent her from entering into the full enjoyment of the property upon the death of Mrs. Lansing. The law sanctioned the gift of Mr. Suffern when it was made and the law cannot cut down the gift by imposing a transfer tax when there was no transfer.

Even if her interest was contingent, nevertheless, as was said by Judge Cullen in a late case, "the interests of the devisee accrued on the death of the testator and at that instant, and were immune from legislative attack whether contingent or vested." (*Matter of Vanderbilt*, 172 N. Y. 69, 73, citing *Brevoort* v. *Grace*, 53 N. Y. 245.).

It is not at all necessary to determine whether the remainder which Mrs. McVickar took under her grandfather's will was vested or contingent. If we assume that the remainder was contingent, nevertheless it was acquired by Mrs. McVickar under her grandfather's will at the instant of his death. It then became a property right in her which was just as sacred and just as immune from legislative attack as any other property right. (*Breevoort* v. *Grace*, 53 N. Y. 245.) Of course, it is only for this purpose that that case is cited, no transfer tax having been enacted for many years after it was decided. It is true that Mrs. McVickar's estate was subject to be defeated by her death before her mother, or by diminution if her mother left other children, but her right to the estate if she survived her mother was indefeasible. I am at a loss to see what bearing the question of a remainder being vested or contingent has to do with the the liability to the transfer tax when that remainder was created prior to the imposition of any transfer tax. The theory of a transfer tax is that it is a tax on the right accorded to take under a will or to succeed in case of intestacy which, it is said in the decisions, are privileges that may be accorded or denied by the state. (*Matter of Dows*, 167 N. Y. 227; *Magoun* v. *Illinois Trust & Sav. Bank*, 170 U. S. 283.) This is the only theory on which the tax can be upheld; for it is imposed upon United States securities on which, of course, the state cannot impose any property tax. Now, suppose that the state at the time it imposed the inheritance tax instead of enacting that statute had forbidden the making of wills and succession in case of intestacy, itself taking all the property that a decedent might leave at the time of his death, such a statute could have no possible effect on Mrs. McVickar's rights, for those rights had been acquired long before. There-

fore, what privilege did she get at that time from the state for which it can charge or impose a tax ?   The ground on which the *Pell* case proceeded was that a transfer tax could not be imposed on the acquisition of property where the acquisition had taken place prior to the enactment of the taxing statute.   The ground on which the *Dows* case proceeded was that the legatees took under a power of appointment in a will made subsequent to the enactment of the Inheritance Tax Law, and that the state could impose a tax on property passing under that will.   It was strongly intimated, however, that had the power of appointment not been exercised and the parties had taken under the will of their grandfather, the estate would not have been liable to the tax.   The difference between my brother HAIGHT and myself is that he maintains that Mrs. McVickar's rights accrued on the death of her mother, while I insist they accrued on the death of her grandfather.   It is true that their value would have been destroyed by her death before that of her mother, but for her survival she is in no way indebted for any privilege accorded to her by the state.

The orders of the surrogate and of the Appellate Division should be modified by reducing the appraisement of the estate for the purpose of the transfer tax by deducting therefrom the sum of $500,672.03, the value of the property passing to Janet L. McVickar under the will of Thomas Suffern, deceased, and as modified affirmed, with costs to the appellants in all courts.

HAIGHT, J. (dissenting).   Thomas Suffern died in the city of New York on the 11th day of April, 1869, leaving a last will and testament which was admitted to probate by the surrogate of that county.   In it he, among other things, gave and devised one-half of his residuary estate to trustees for each of his children living at the time of his death, to have and to hold such portion of each child in severalty, in trust, during the life of such child, and to receive the rent, issues and profits thereof during such life, and to apply the same to the use of such child during life ; and after the death of such

child he gave the portion so held in trust for such child to such child's *heirs at law*, subject, however, to the power of such child to devise the remainder by last will and testament, in fee, to the heirs at law and collateral relatives of such child, in such proportion and manner and with such limitations as such child may desire to impose.

Janet S. Lansing was one of the surviving daughters of the testator, who died on the 13th day of October, 1904, leaving a last will and testament dated April 25th, 1892, in which she exercised the power given her by the will of her deceased father, and devised and bequeathed the share of her father's estate, held in trust for her benefit, to her daughter, Janet Lansing McVickar, in fee absolute, her only child and heir at law and who was in being at the death of Thomas Suffern in 1869.

It is now contended on behalf of the appellants that Mrs. McVickar took a vested remainder in the property in question, under the will of her grandfather, Thomas Suffern, at the time of his death, which preceded the enactment of the Inheritance or Transfer Tax Law; and that, therefore, the same was not taxable; and that the power of appointment exercised by her mother under the will of Thomas Suffern did not operate to divest her of such remainder, or in any manner change her interest therein; and that, therefore, it should be treated as a nullity. I am unable to acquiesce in this contention. In the first place, I do not think that Mrs. McVickar took a vested remainder in the estate of her grandfather upon his death. It is true she was a daughter of Mrs. Lansing and was in being at the time of the death of her grandfather, but under the will of her grandfather the estate was devised to trustees to hold the same during the life of her mother, and after the decease of her mother he gave the portion so held in trust for her to "her heirs at law." Mrs. McVickar was not her heir at law, and she could not become such until the death of her mother. A person while living has no heirs at law, and while there may be persons in being who would upon the death of such person become their heirs

at law, they are not, in fact, such until that event happens. Had the will of the grandfather provided that upon the death of Mrs. Lansing the remainder should vest in *his* heirs at law, then upon his death his heirs at law would be known or could have been definitely ascertained and established. But such is not the case with Mrs. Lansing, for her heirs at law could only be ascertained and established after her death. Again, it is said that the estate of Mrs. McVickar was alienable, devisable and descendible during the life of her mother. It is true that it may be alienable, because under the statute a contingent remainder may be sold as well as a vested remainder; but her interest was not devisable or descendible. This is one of the tests by which we ordinarily determine whether it is vested or not. Had she died during the lifetime of her mother, leaving a will, the estate would not have vested in her devisee; or in case she had died without leaving a will, it would not have descended to her heirs at law, for under the express language of her grandfather's will it would have gone to the heirs at law of her mother, Mrs. Lansing, at the time of her death. It will thus be seen that this is not a case where the property vested at the death of the testator and the payment was merely postponed, but that it is a case where the vesting was postponed until the death of Mrs. Lansing, and then the vesting was in the persons who were at that time heirs at law, and, therefore, brings it within the rule of the cases which hold that a future estate, dependent upon the beneficiary surviving another person or arriving at an age fixed by the provisions of the will, is a contingent remainder. (1 Jarman on Wills, 760; *Gilman* v. *Reddington*, 24 N. Y. 9.; *Crosby* v. *Wendell*, 6 Paige Ch. 548; *Carmichael* v. *Carmichael*, 4 Keyes, 346; *Purdy* v. *Hayt*, 92 N. Y. 446; *Savage* v. *Burnham*, 17 N. Y. 561; *Hall* v. *La France Fire Engine Company*, 158 N. Y. 570.) This question I supposed had been finally settled beyond controversy by the unanimous decision of this court in the recent case of *Hall* v. *La France Fire Engine Company* (*supra*). In that case the question arose under a deed instead of a will.

Under its terms it conveyed the property to Mrs. Hall "for and during her natural life, and at her death to the heir or heirs of her body her surviving." At the time of the executing and delivery of this deed Mrs. Hall had a child living, but who died during her lifetime. It was contended on behalf of the plaintiff, the father of the child, that his wife, Mrs. Hall, took a life estate and the child a vested remainder; that upon the death of the child the estate descended to him as heir at law, and that upon the death of Mrs. Hall he became entitled to possession. PARKER, Ch. J., in delivering the opinion of this court, said : "The remainder is contingent because both the person to whom, and the event upon which the estate is limited to take effect, are uncertain. The words, 'heirs of her body,' as used in the habendum clause, mean descendants, and, therefore, the person to whom the remainder over is to go must be a child or descendant, and the event upon which the estate takes effect is the death of the life tenant leaving some descendant her surviving. The requirement that the reversion should go to an heir of her body her surviving, places a contingency upon the remainder, for it could not be determined until the death of the mother whether she would leave an heir of her body her surviving." It consequently follows that Mrs. McVickar did not take a vested remainder in the property under the will of her grandfather until the death of her mother, which occurred, as we have seen, long after the enactment of the Transfer-Tax-Law. Under that statute (Laws of 1899, ch. 908, sec. 220) it is provided that a tax shall be imposed upon the transfer of the property in case where the transfer is by will or by the intestate laws of the state, or by deed, grant, bargain, sale or gift made in con- templation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. Also that a tax shall be imposed "when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof by any such transfer, whether made before or after the pass- age of this act."

In *Matter of Pell* (171 N. Y. 48) we held that remainders which had vested prior to the enactments of the Inheritance or Transfer Tax Law of June 30th, 1885, could not be assessed under the provisions of this statute; that the tax provided for was not upon the property transferred, but was upon the right of succession. But, as we have seen, Mrs. McVickar did not become vested with the estate until the death of her mother. Upon the happening of that event she became vested and entitled to the immediate possession of the property. Her right of succession then accrued and the transfer to her dates from that event; and at this time the statute imposed a tax upon the persons beneficially entitled in possession to the property, whether the will, under which the right of succession accrued, was executed before or after the passage of the act. It is now proposed that this court should hold that the immunity from the transfer tax should be extended to contingent remainders under the authority of *Matter of Vanderbilt* (172 N. Y. 69, 73), and that we should in effect overrule the case *In the Matter of Pell*, in so far as the arguments therein tend to show that a vested remainder only was immune from the inheritance or transfer tax. In *Matter of Vanderbilt* the question arose under the will of Cornelius Vanderbilt, deceased, who died after the statute imposing a transfer tax had been enacted and was in force. By his will he had provided that the remainder of his estate should be given in trust to his executors for the benefit of his son, Alfred G. Vanderbilt, which trust was to continue until he became 30 years of age, at which time one-half of the estate was to be turned over to him, and as to the balance the trust was to continue until he became 35 years of age, when the remainder was to become his absolutely. The question in that case was as to whether the transfer tax was payable forthwith or whether it should be postponed until Alfred came into possession of the estate. It called for a construction of the Tax Law, as amended by chapter 76, L. 1899. In that case no question was involved or considered by the court involving the right to tax remainders, either vested or contingent, under

the wills of testators who had died before the enacting of the
Transfer Tax Law. Three opinions were written. CULLEN,
J., held that the tax was payable forthwith, but in alluding to
the *Pell* case he stated that the interest of the devisee accrued
on the death of the testator, and at that instant was "immune
from legislative attack, whether contingent or vested," citing
*Brevoort* v. *Grace* (53 N. Y. 245). He then stated that the
*Vanderbilt* case presented a situation the reverse of the
*Pell* case. The *Brevoort* case had reference to the power
of the legislature to authorize the sale of lands of remain-
dermen, and it was there held that the legislature had
power, by special statute to authorize the sale of lands of
infants, and that this power extended to future contingent
interests of those not in being, but that it had no power to
authorize, without consent, the sale of lands in which adults
competent to act for themselves had an interest, vested or
contingent, unless the sale became necessary for the payment
of taxes or assessments. It will at once be seen that this case
had no reference to the power of the legislature to impose a
transfer or succession tax. The language quoted from the
opinion of Judge CULLEN had reference to a question not
involved in the case and it was not considered by either of the
other judges writing therein. It was *obiter*, and I think
should not be deemed to be controlling upon the question here
involved. Afterborn children may become contingent remain-
dermen. The interests of persons in property cannot well
accrue until they come into being, and not then in case the
interests are contingent until the happening of the event upon
which they become vested. I think the legislature has the
power to impose a transfer tax upon the succession thereafter
of such persons to property.

I have considered the case thus far upon the theory that
the exercise of the power of appointment by Mrs. Lansing
was ineffectual, and that Mrs. McVickar had elected to take
under the will of her grandfather instead of the will of her
mother. There was, as we have seen, an authorized power of
appointment given to Mrs. Lansing by the will of her father

and that she exercised such power in her last will and testament, in favor of Mrs. McVickar, her daughter. Under the statute, "whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." (Laws of 1896, ch. 908, section 220, as amended, L. 1897, ch. 284, section 220, subd. 5.) The power of appointment was exercised by Mrs. Lansing after the passage of the foregoing statute, and, therefore, is taxable, if valid and effectual. (*Matter of Dows*, 167 N. Y. 227.) It is claimed, however, that the exercise of the power was ineffectual, for the reason that it bequeathed to Mrs. McVickar no other or different estate from that which she was entitled to under the will of her grandfather; and that she had the right to waive the provisions of the will of her mother in her favor, and elect to take under the will of her grandfather. My answer to this contention is that there has been no valid waiver made by Mrs. McVickar of the provisions of the will of her mother in her behalf, neither has she made any binding election to take under the will of her grandfather. She has merely opposed the assessment of the transfer tax, that is all. If it should become necessary for her in the future to maintain an action to recover, or to prove her title to, any of the property of the trust estate created by her grandfather, she would have to resort to the power of appointment exercised by her mother in her last will and testament, for in no other way could she prove title, in view of the fact that by the express provisions of the will of her grandfather, the bequests in behalf of the heirs at law of Mrs. Lansing were made subject to the exercise of the power of appointment by her mother. Of course, the authority for the exercising of such power relates back to the instrument granting the power, and the Statute of Perpetuities cannot be evaded by any devise or

bequest which would authorize the suspension of the power of alienation beyond two lives in being, by the exercise of a power of appointment. But, so far as the power of taxation is concerned, the statute in force at the time the power is exercised and becomes operative by the death of the donee of the power, becomes binding upon the parties and authorizes a tax upon the right of succession to property thereunder. (*Matter of Dows, supra.*) The exercise of a power of appointment creates a new estate, dating from the time that such appointment becomes effectual, and is, therefore, governed by the laws then in force. (*Matter of Vanderbilt*, 50 App. Div. 246; affirmed, 163 N. Y. 597, on the opinion of PATTERSON, J., below.) But it is contended that in the exercise of the power, if the devise or bequest is to the same person and in the same amount that he would take under the will of the donor of the power, there would be a creation of no new estate. But I think that no such distinction should be made, at least in so far as the taxing power of the state is concerned. Our Transfer Tax Law, in terms, covers the exercise of the power, and our attention has been called to no case which limits it to the extent now claimed. In England it has been held that an appointment under a power which relimits the old estate creates a new estate, although given to the same person and for the same purpose and affecting the same property; and that a person entitled to a remainder who had been deprived thereof by proceedings in bankruptcy in favor of his creditors, was reinvested with the property through the exercise of a power of appointment thereafter made in his behalf. (*Walker v. Armstrong*, 21 Beav. 284; *In re Vizard*, L. R. [1 Eq. Cas.] 667; Farwell on Powers [2d ed. 1893], 275, and see authorities there cited.)

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN and BARTLETT, JJ., concur with VANN, J.; WERNER, J., concurs with HAIGHT, J.; GRAY, J., absent.

Ordered accordingly.