CENTRAL HANOVER BANK AND TRUST COMPANY AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF WILLIAM H. MORGAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91101.    Promulgated December 21, 1939.

*Leonard A. Blue, Esq.,* for the petitioner.
*James C. Maddox, Esq.,* for the respondent.

HILL: The petitioner contends that because of the renunciations the property held in trust under the will of Laura La Montagne did not pass in remainder by the exercise of the power of appointment by William H. Morgan, the decedent herein, and is not part of his gross estate for the purpose of the estate tax. Respondent contends *contra.*

The Revenue Act of 1926, as amended, provides as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *

    *      *      *      *      *      *      *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will * * *.

The statute provides three requisites for the inclusion of appointed property in the estate of the decedent, namely, the existence of a general power of appointment, the exercise of such power by the decedent by will, and the passing of the property by reason of such exercise. If the property does not pass as a result of the exercise of the power of appointment by the decedent, then it is not to be included in the decedent's gross estate. *Helvering* v. *Grinnell,* 294 U. S. 153.

Bearing in mind that Laura La Montagne died leaving surviving her four sons and no husband and that each of her four sons survived petitioner's decedent, the following are in brief the provisions of her will applicable to the questions under consideration:

1. An estate for life in her residuary estate was bequeathed in trust to her four sons in equal shares, with the income from one such share payable to each son for the term of his life.

2. General power of appointment was granted to decedent to designate and appoint the person or persons who should take the remainder interest in the share of the trust property in which each of the four sons had a life estate.

3. Decedent exercised the power of appointment by will and designated the persons who should take the remainder interests in the trust property at the expiration of the several life estates. Such designation under the following conditions constituted the following described persons as such remaindermen:

(a) Upon the death of each of such sons the fee title to the property in which he had a life estate should vest in his surviving issue, if any, in equal shares.

(b) If a son should die leaving no issue surviving the fee title to the property in which he had a life estate should vest in the surviving brothers of such deceased son and in the surviving issue of any predeceased brother, by representation, in equal shares.

(c) If the last survivor of the sons should die without leaving surviving him any issue of any of the sons the fee title to the property in which he had a life estate should vest in the Metropolitan Museum of Art in the city of New York.

Laura La Montagne's will contains no provision for the disposition of the remainder interests in her residuary estate upon the expiration of the life estates of her several sons therein except by the exercise of the power of appointment granted to petitioner's decedent. It is apparent, therefore, that none of the sons of Laura La Montagne acquired under her will a remainder interest in any of the property of her estate. It is also apparent that if decedent had failed to exercise the power of appointment granted him or if the exercise of such power was ineffective to pass title because of the renunciations of title thereunder by the four sons or for any other reason, the four sons as the only heirs at law of their mother would have, as of the date of her death, the fee title in equal shares to the remainder interests in the trust property upon the expiration of their several life estates therein.

That decedent exercised the power of appointment is admitted but it is contended by petitioner that the renunciations of title thereunder rendered the exercise of appointment ineffective to pass title and that hence one of the elements essential to the applicability of section 302 (f) of the Revenue Act of 1926 is absent. The premise of petitioner's contention is that by the renunciations of title under the appointment no title to the remainder interests in the trust property passed either under the will of decedent or under the will of Laura La Montagne, and that as to such remainder interests the latter died intestate. Upon the basis of such premise petitioner claims that the four sons of Laura La Montagne took title in fee to the remainder interests in question under the law of descent and distribution as the only heirs at law of their mother, and that they received nothing by appointment. Petitioner relies mainly for support of its con-

1216

tention on *Helvering v. Grinnell*, 294 U. S. 153, and on *In re Lansing's Estate*, 182 N. Y. 238; 74 N. E. 882. The *Grinnell* case involved the following state of facts: John O. Stone died a resident of New York. He left a will by which he created for the benefit of his daughter, the decedent, Annie Stone, a trust fund the income from which was to be paid to her during her life. The will directed that upon her death her share of the estate should go or be applied to such persons and such uses as she might appoint by last will and testament; but, in default of such appointment, her share of the estate should go and belong to her children or issue, respectively, by right of representation, or in default of such issue to her next of kin. Annie Stone died leaving no issue and leaving as her next of kin her two sisters, Ellen J. Stone and Sarah J. Grinnell. Annie Stone left a will by which she devised and bequeathed the property in question in equal shares to her two sisters above named. After the death of Annie Stone the two sisters in writing renounced their right to receive the property under the appointment made by Annie Stone and claimed it under the will of their father. If Annie Stone had not exercised her power of appointment, her two sisters would have taken under their father's will the same estate that was bequeathed them under the exercise of the power of appointment. The Supreme Court held, upon this state of facts, that because of the renunciation of title under the appointment, the property involved was not includable in the estate of Annie Stone for estate tax purposes. The Court said:

Can it properly be said that, because the beneficiaries elected to take the property under a distinct and separate title, the property nevertheless passed under the power? Plainly enough, we think, the answer must be in the negative.

The case of *In re Lansing's Estate, supra*, involved a state transfer tax on property passing under a power of appointment and was based upon the following state of facts: Thomas Suffern died a resident of New York leaving a last will and testament in which he gave and devised to his daughter, Janet S. Lansing, a certain portion of his estate during her life with the remainder to her heirs at law, subject to a testamentary power of appointment in her to dispose of the remainder in fee after the termination of her life estate "among her heirs at law and her collateral relatives in such proportion and manner and with such limitations as she may desire." Janet S. Lansing died leaving a will in which she exercised the power of appointment by naming her only child and heir at law, Janet Lansing McVickar, to take the property in question. The surrogate imposed a transfer tax on the transfer under the appointment. Janet McVickar elected not to accept title under the appointment. The court

held that no such tax was due for the reason that Janet McVickar took nothing by the power of appointment which she did not already have under the will of her grandfather, Thomas Suffern. The court said:

The property under consideration never belonged to the daughter, Mrs. Lansing, although she had the income therefrom during her life through a trust created for her benefit by her father's will. By the same sentence which created the trust during her life, the property was given after her death to the granddaughter, Mrs. McVickar, subject to the exercise of the power of appointment. That power was limited to two classes of persons, consisting of the heirs at law and the collateral relatives of Mrs. Lansing. Mrs. McVickar was her sole heir at law, and the power of appointment, as formally exercised, gave all the property to her the same as her grandfather had given it to her more than 30 years before. In other words, the attempt to exercise the power neither increased nor diminished the estate of Mrs. McVickar, and did not affect in any degree the value of her grandfather's gift. It did not effectively transfer any property whatever, for she took from her grandfather, and nothing was added to or taken away from the gift by the exercise of the power through the will of her mother. The execution of the power left the title where it was before, and the result is the same as if there had been no power to exercise. Mrs. McVickar was born before her grandfather died, and upon his death she took a vested interest in remainder, because she was "a person in being, who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate" created in trust for the benefit of her mother. * * * Her rights were fixed by the will of her grandfather, and, unless changed pursuant to its provisions, her estate in expectancy would become an estate in possession upon the death of her mother. While the situation was subject to change under the power of appointment, no change was made. Although the power was exercised in form, her title was perfect without it, and she derived no benefit from it. The power was to "dispose of the remainder," and the remainder was not disposed of, but continued where it was. The attempt to execute the power was not effective, because it did nothing. The exercise of a power which leaves everything as it was before is a mere form, with no substance.

* * * The power as it might have been exercised would have left Mrs. McVickar with no title at all, but as it was exercised it left her the same title that she had before. It gave her nothing and took nothing away from her. She is not forced to claim through the second clause of her mother's will, for she took under the will of her grandfather. She had the right of election and could refuse to take under the appointment and still hold the property, for her title was as good without as with the exercise of the power. * * *

An appointee under a power has the right of election, the same as a grantee under a deed. "It is essential to the legal operation of a deed that the grantee assents to receive it. It cannot be imposed upon him, and there can be no delivery without an acceptance." * * * While the mother could appoint, the daughter could reject. Mrs. McVickar could therefore repudiate the action of her mother in attempting to exercise the power and hold the property from her grandfather.

The Supreme Court in the *Grinnell* case quoted with approval and at length from the *Lansing's Estate* case and adopted the reasoning thereof as to the meaning and application of the state law as being

equally applicable to the question presented in the *Grinnell* case under the Federal statute.

Under the facts in each of the above cited cases the persons designated as appointees under the exercise of the power of appointment were vested with the same title to the same estate from a source independent of the appointment as was given them by the appointment. In the proceeding before us an analogous state of facts does not exist. Here the title claimed for the four sons was a fee title to the remainder in equal shares by inheritance, and if they had title by inheritance it was that kind of title. Under the power of appointment as exercised neither of the sons was given such title. The appointment gave them neither an estate in fee nor an estate in equal shares in the entire remainder of the trust property. It gave them a defeasible title in different and unascertainable proportions in not to exceed three-fourths of such remainder.

For petitioner to succeed in its contention that none of the remainder of the trust property is includable for estate tax purposes in decedent's estate it must appear from the evidence that the entire remainder was appointed to the sons and that they each had the same title by inheritance as was appointed to them. *In re Lansing's Estate*, *supra; James C. Webster et al., Executors*, 38 B. T. A. 273. *Helvering v. Grinnell*, *supra*, is not *contra*. Not only do such facts not so appear from the evidence, but the contrary appears therefrom. To justify the exclusion of a part only of such remainder from decedent's estate for estate tax purposes it must appear from the evidence that title to the part so excluded was given to the sons by appointment and that they each had, independent of the appointment, title by inheritance to such excluded part. Cf. *In re Duryea's Estate*, 277 N. Y. 310; 14 N. E. (2d) 369; *In re Slosson's Estate*, 266 N. Y. 79; 110 N. E. 166; *Lewis Spencer Morris et al., Executors*, 39 B. T. A. 570. Also to justify such exclusion, whether on the theory that no title passed by appointment because of an existing independent title in the appointees to the same property or on the theory that renunciation of title by appointment prevented such title from passing regardless of the existence of title in appointees from another source, it must appear from the evidence what proportion of the appointed property did not pass by appointment. The burden of showing such facts is upon petitioner. It has not met the burden.

It would be an anomaly to hold that the remainder of the trust property is intestate property as a result of the renunciations by the sons of title under the appointment in view of the fact that appointees other than the sons will under the terms of the appointment, if certain contingencies happen, receive a part or all of such remainder interest to the exclusion of the sons. The rights of such

other appointees are testamentary rights and affect the title to the entire remainder. Whether the sons will or will not get any part of the remainder of such property depends upon the happening or nonhappening of contingencies specified in the will of decedent in exercising the power of appointment regardless of the renunciations of the sons. The whole title to the remainder of such property was disposed of by appointment in such way that no part of it can be intestate property. It can not be intestate property as to the sons of Laura La Montagne and testate property as to the other appointees under decedent's will.

In determining the status of the titles under the appointment we must consider them as of the date of the death of petitioner's decedent. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. In view of the contingencies with which such titles were burdened it is impossible as of the time of decedent's death to determine what portion of the remainder of the trust property, if any, each of the sons will acquire by appointment. At least the one-fourth interest in such remainder as appointed by the donee of the power, representing the share in which the survivor of the four sons has a life interest, can under no circumstances go to the sons or either of them. If each of the sons of Laura La Montagne should die leaving no issue surviving or if only the last survivor of such sons should die leaving issue surviving, the son first to die will acquire no part of such remainder, the son second to die will receive one-twelfth of such remainder, the son third to die will receive five twenty-fourths of the remainder and the son last to die will receive eleven twenty-fourths of such remainder. Under the conditions stated the son last to die will receive more than one-fourth share of such remainder and hence a greater estate therein than if he had taken as an heir at law of his mother under the laws of intestacy. It is, of course, impossible, as of the date of the death of decedent, to determine the order in which the deaths of the four sons will occur and, hence, it can not be determined what, if any, share of the remainder of the trust property each of the sons may receive under the appointment, but one of them may receive more than a one-fourth share thereof. The contingent factor of surviving issue of either of the sons also renders impossible the determination, as of the time of the death of the decedent, what portion of the remainder, if any, such sons may respectively receive. The occurrence of such contingencies would either diminish or wholly defeat the estates in remainder which the sons, or some of them, would otherwise receive under the appointment.

At the time of decedent's death one of the sons, Morgan E., had living two minor children. Under the appointment these children

were the remaindermen to their father's life tenancy in one-fourth share of the trust property. Their title was defeasible only by their predeceasing their father. Such title passed to them by the appointment just as effectively as title passed to each of the four sons of Laura La Montagne by such appointment. Also the issue, if any, of the sons, whether or not in being at the time of decedent's death, who should survive their fathers were by the appointment designated as remaindermen after their father's life tenancy and remaindermen, *per stirpes*, to the extent that their fathers, if living, would be remaindermen.

It is obvious from the foregoing that the remainder interests to the sons of Laura La Montagne, as given by the appointment, were vastly different in character and scope from the remainder interests which are claimed for them under the laws of intestacy as the only heirs at law of Laura La Montagne. It is also obvious that the four sons in question were not the only appointees under the power of appointment. There was no renunciation of title under the appointment by or on behalf of the two children of Morgan La Montagne or of the contingent titles of unborn issue.

This proceeding is clearly distinguishable on the facts from the cases of *Helvering* v. *Grinnell* and *In re Lansing's Estate, supra,* and hence the decisions in those cases are not controlling here. However, the principles enunciated in those cases indicate clearly, we think, that under the facts here the renunciations of title under the appointment were ineffective to prevent the passing of title by the appointment.

*In re Cooksey's Estate*, 182 N. Y. 92; 74 N. E. 880, involved, as did the case of *Lansing's Estate, supra,* a transfer tax under the laws of New York providing that when any person exercises a power of appointment such appointment when made shall be a taxable transfer.

In the case of *Cooksey's Estate, supra,* the tax was resisted on the ground that the appointment granted the same estate to the same persons that was bequeathed and devised under the will of the donor of the power of appointment, subject to the exercise of such power. This was true except that under the appointment the amounts to be paid to the beneficiaries at the times stated under the donor's will were fixed at the maximum amounts specified under the donor's will instead of leaving such amounts to be fixed in the discretion of trustees, and except further that the discretion as to the amounts to be paid for the education, maintenance, and support of minor beneficiaries was under the appointment given to the trustees instead of to the guardian of such minors as provided in the donor's will.

The court, in holding the transfer under the appointment taxable, said:

Again, as we have seen, under the will of Mrs. Cooksey, in exercising the power of appointment she made material changes with reference to paying over the remainder to her children from that incorporated in the will of her father. While each of her children may ultimately receive the same amount, yet she, by her will, fixes definitely the amounts that shall be paid to each of her children upon their arriving at the ages of 21 and 25 years, leaving no discretion in the trustees as to the amounts that shall be paid over to them, and then vests in the trustees the discretionary power to determine how much shall be used for the support and education of the children during their minority. It appears to us, therefore, that there was a necessity for exercising the power, that it cannot be treated as a nullity, and that, therefore, the transfer tax under the statute was properly assessed.

The facts in the instant case are much stronger than in the *Cooksey* case in support of title passing by appointment. Here, the titles under the power of appointment which the sons of Laura La Montagne renounced were not only not the same as they would have received as the only heirs at law of their mother if the power of appointment had not been given or had not been exercised, but they differed so essentially from such titles that there was little, if any, analogy to them.

We hold that the entire remainder of the trust property is includable in decedent's estate for estate tax purposes.

The remaining question for determination is whether, in determining the value at which the remainder of the trust property passed under the power of appointment, there should be deducted any amount as estimated trustee's commissions which will be payable on the distribution of the trust property at the termination of the trusts. Respondent disallowed such deduction. Petitioner contends that such deduction should be allowed.

Under section 302 of the Revenue Act of 1926, property passing under a general power of appointment exercised by will must be included for estate tax purposes in the estate of the donee of the power at its value at the time of his death. The estate tax is imposed upon the net estate of the decedent, and section 303 of such Revenue Act provides that the net estate for such purpose shall be the value of the gross estate reduced by certain enumerated deductions and exemptions. Among such deductible items are administration expenses and claims against the estate or any indebtedness in respect of the property to the extent that such claims or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth.

The property passing by appointment in this proceeding is the remainder interest in property now being administered by a testa-

1222

mentary trust. Section 285 of the Surrogate's Court Act of the State of New York provides that the surrogate must allow to a testamentary trustee for his services in such official capacity commissions for "receiving and paying out all sums of money" at specified rates of percentage of the sums so received and paid out. The trustee's commissions for "receiving" have been paid to it and were allowed by the respondent as a deduction from the gross value of the appointed property, but respondent disallowed any deduction for estimated trustee's commissions for "paying out" any such sums of money. It is stipulated by the parties that such disallowed commissions, if computed at the rates specified in section 285 of the Surrogate's Court Act upon the value of the property in question on October 12, 1934, the date of decedent's death, would amount to the sum of $3,970.25, but the value of the property at the date named is not the basis upon which such commissions are computable. To justify the deduction claimed in determining the value of the property passing by appointment two things are necessary—first, authority must be found therefor in the statutes, and, second, the amount of such commissions must be established by the evidence. The deduction claimed is for an estimated amount of commissions which will be payable to the trustee of the testamentary trust upon paying out sums of money in distribution of the trust property at the termination of the several trusts. We find no provision in the revenue act authorizing such a deduction. Nor do we find authority in law for excluding from the value of the appointed property the amount of such estimated future commissions in determining the value of the property passing under general power of appointment. It is our duty, however, to find the value of such property and in doing so we should take into consideration all facts pertinent thereto. The value of the property involved herein has been stipulated without taking into account the obligation to pay as trustee's commissions in the future specified percentages of the value of the property when distributed. To hold that the value of such property is its value as stipulated, reduced by estimated trustee's commissions computed on such stipulated value, would be unsupported by evidence and, hence, an arbitrary action. It is too obvious for comment that such future commissions are not measurable by applying the statutory rates of percentage to the value of the property at the time of decedent's death, but only by applying such rates to the value of the property when distributed or paid out. There is no evidence of record, and we doubt if any can be produced, by which the amount of such future commissions can be determined. Hence, even if in law there is authority for deducting such commissions in determining the value of the property for estate tax purposes, there is a lack of evidence from which to ascertain the amount of

such deduction, and the burden is upon petitioner to produce such evidence. *Burnet* v. *Houston*, 283 U. S. 223; *Helvering* v. *Taylor*, 293 U. S. 507.

The parties hereto stipulated the value of the property in question as of the date of decedent's death without taking into account trustee's commissions in amounts to become determinable and payable only upon the paying out of the trust property at the termination of the several trusts. It is not shown by the evidence to what extent the payment of such future commissions reduces the value of the property as stipulated or that it reduces such value at all. We hold, therefore, that the stipulated value of the property is the value thereof to be included in decedent's estate for estate tax purposes.

Reviewed by the Board.

*Decision will be entered under Rule 50.*